MOORE, Judge.
This is an appeal taken by the State from the trial court’s order granting the appel-lee’s motion to suppress evidence. Appellant contends that the seizure of evidence was based upon probable cause and was therefore valid. We agree, and reverse.
On November 30, 1978, Detective Fraw-ley of the Martin County Sheriff’s Office observed appellee at the front desk of the Sheriff’s Office in the company of Glen Harden and Charles Roous. Later that same day he again observed appellee, this time inside the Martin County Jail, though neither appellee nor Harden had signed the log required of all persons entering the jail. At this time, Roous was either being arrested or booked on a capias.
At the time he observed appellee in the jail, Frawley was summoned by a Detective Gumbinner who informed him that an FM transmitting and receiving device (a “bugging” device) had just been seized. Fraw-ley observed the device in Gumbinner’s possession. After receiving this information from Gumbinner, Frawley left the jail and headed toward the detective bureau office. At the sallyport at the south end of the jail Frawley again observed appellee and Harden, at which time appellee called out to Frawley and stated that he wanted his bug back. Frawley walked back to the appellee and Harden and engaged them in a conversation with appellee again demanding the return of his device. During this conversation Frawley noticed that Harden stepped back about 15 to 20 feet. He also observed appellee take a small miniature tape recorder from his front left pocket. He saw ap-pellee hold this recorder in the palm of his left hand, at his side, facing away from Frawley. Appellee did not mention the recorder nor did he show it to Frawley, but Frawley recognized it as a recorder because he owned one similar to it. Frawley was not able to observe whether the recorder was running or whether it had batteries or a tape in it. As their conversation terminated appellee placed the recorder back into his pocket. Roous and appellee then exited the jail and they left in a black Lincoln Continental.
Frawley immediately went to the detective bureau to do some research on the wire interception laws. He then contacted Assistant State Attorney Frank Lynch who asked him if there was time to obtain a warrant for the purpose of seizing the “bugging device”. Frawley replied that there was not because both subjects lived *286 out of the county at that time. Frawley then contacted Sergeant Deludes in the Sheriff’s Office to tell him to be on the lookout for appellee’s vehicle and to stop it and seize the tape recorder. He described the vehicle as a black Lincoln Continental, with several antennae, carrying two white men, appellee and Roous. Frawley also advised Deludes as to what had occurred, specifically stating that appellee had apparently been recording his conversation with Frawley without Frawley’s consent. He also stated that Gumbinner had previously seized the FM bugging device. This BOLO was issued at approximately 2:30 p. m. and the appellee was stopped within the hour about three to four blocks from the Sheriff’s Office.
Deludes testified that the car was stopped by Sergeant Baker at Deludes’ request and in his presence. He testified that Frawley had told him the following information: that Gumbinner had seized an FM device; that Frawley believed that his conversation had been recorded; a description of the recorder; and a description of the car in which the appellee was driving.
As soon as Baker stopped appellee’s vehicle, appellee exited. Deludes walked up to him and observed a recording device fitting the description given to him by Frawley. The device was located in appellee’s shirt pocket. Deludes identified himself and told appellee that he was seizing the recorder. Both men reached for the recorder at the same time, but Deludes managed to gain possession of it. Deludes then took the recorder and issued a property receipt to appellee, which the appellee refused to sign. Both Deludes and the appellee testified that the recorder was located visibly on the ap-pellee’s person at the time of the seizure and that it was in the plain view of the officer. The appellee was not arrested at this time, but he was later charged by information on December 27, 1978 with unlawfully intercepting an oral communication of another in violation of Section 934.-03(l)(a), Florida Statutes (1978), and unlawfully possessing an intercepting device in violation of Section 934.04(l)(b), Florida Statutes (1978).
The sole issue presented by this case is whether there was sufficient probable cause to stop the vehicle of the appellee on the afternoon of November 30, 1978, and thus validate the subsequent seizure of appellee’s tape recorder. If probable cause existed the seizure of the bugging device was justified because of exigent circumstances. See, Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925), and Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970).
Probable cause is defined as “a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious person in believing the accused to be guilty.” Trivette v. State, 244 So.2d 173 (Fla. 4th DCA 1971); State v. Knapp, 294 So.2d 338 (Fla. 2nd DCA 1974). The arresting officer need not actually see the law being violated, nor must he satisfy himself beyond any question that a crime has been committed. Russell v. State, 266 So.2d 92 (Fla. 3rd DCA 1972). The person making the arrest may act either upon facts within his own knowledge or on those communicated to him by a responsible person. Bryant v. State, 155 So.2d 396 (Fla. 2nd DCA 1963). Probable cause to arrest exists where a reasonable person, having the specialized training of a police officer in reviewing facts known to the arresting officer prior to the actual time of arrest, would come to the conclusion that a crime is being or has been committed by the person to be arrested. Skelton v. State, 349 So.2d 193, 194 (Fla. 3rd DCA 1977). A demonstration of the cumulative effect of the police officer’s knowledge and information establishing probable cause can be found in State v. Outten, 206 So.2d 392 (Fla.1968), where the Court stated:
In determining whether the police have probable cause to believe that a [crime] was being committed so as to justify an arrest without a warrant, the sufficiency of the knowledge of the officers must be determined, not by analysis of the effect of each known circumstance in isolation, but by a conclusion as to what a reasona *287 ble man, knowing all the facts which the officers knew from their investigation would have believed under the circumstances.
Although we are mindful that the decision of the trial court comes before this Court with a presumption of correctness, the overwhelming weight of the evidence adduced at the suppression hearing indicates error. It is obvious from the record that Frawley had good reason to believe that the appellee was probably bugging him, especially when we consider that he had prior knowledge that the appellee was carrying the bugging device. Frawley saw such a device in the hand of the appellee under circumstances which do not indicate he was mistaken. The evidence indicates that Frawley had a rational basis for formulating a probable belief that a violation of Section 934.03(l)(a) had occurred. The cumulative effect of the information and observations known to Frawley, combined with his expertise, knowledge, and skill as a police officer, were sufficient to give him reasonable grounds for believing that the appellee was engaged in the commission of a crime. Since Frawley had probable cause, the oral transmission of the information on which it was based to Detective Deludes perpetuated the probable cause, and allowed a valid seizure of the appellee’s recorder.
Accordingly, the trial court’s order suppressing the evidence is reversed and this cause is remanded for further proceedings consistent herewith.
REVERSED and REMANDED.
DOWNEY and ANSTEAD, JJ., concur.