487 So.2d 1211 (1986)
Richard P. WILLE, As Sheriff of Palm Beach County, Appellant/Cross Appellee,
v.
Beth J. RAYMOND, Appellee/Cross Appellant, and
Steven Paul Raymond, and Andrew John Raymond, His Son, Appellees.
No. 85-398.
District Court of Appeal of Florida, Fourth District.
May 7, 1986.
John R. Beranek, Jane Kreusler-Walsh and Larry Klein of Klein & Beranek, P.A., West Palm Beach and McKeown & Gamot, P.A., Palm Beach, for Wille.
Denise V. Powers of Haddad, Josephs & Jack, Coral Gables, for the Raymonds.
GLICKSTEIN, Judge.
This is an appeal of a final judgment, and order denying a new trial, in favor of plaintiff/appellee, and a cross appeal of an award of zero damages in a false imprisonment case. We reverse the main appeal and affirm the cross appeal.
Steven Paul Raymond, and his wife Beth J. Raymond, individually and as parents and next friend and natural guardian of Andrew J. Raymond, their son, sued Palm Beach County and Deputy Sheriff Susan Lange for damages arising from Steven Paul Raymond's false imprisonment, malicious prosecution, assault, battery and interference with the emotional tranquility of both Steven and Andrew Raymond. The complaint was later amended to include Sheriff Richard Wille as a defendant and to make clear that Susan Lange was a deputy sheriff. The complaint as to Palm Beach County was subsequently by stipulation dismissed with prejudice.
Discovery was had and a jury trial was held. The jury found there had been false imprisonment of Mr. Raymond on the part of the sheriff or his deputies, and awarded damages of $80,000 to Mr. Raymond. They found no false imprisonment of Andrew. The plaintiffs unsuccessfully moved for new trial on Andrew's claim of false imprisonment and Mrs. Raymond's claim for loss of consortium. Sheriff Wille also sought new trial on the grounds there was probable cause for the arrest and the verdict was without support and excessive. Wille also filed a motion for judgment in accordance with motion for directed verdict, and a motion to limit the damages in accordance with the statutory limit of section 768.28, Florida Statutes (1983). The pertinent limit at the time the cause of action accrued was $50,000. Wille's motion for new trial and his motion for judgment in accordance with motion for directed verdict were denied. His motion to amend final judgment and limit liability for damages was granted. This appeal followed entry of the amended final judgment.
Deputy Lange, now Susan Julia Szczepanski, testified that she had not at the time *1212 of the events central to this suit received any special training in the area of child abuse.[1] On April 1, 1980, she was traveling west on Belvedere Road in West Palm Beach, driving slowly and about to make a right turn, when she heard a lot of screaming and cursing coming from the south side of the street. She heard Steven Raymond say, "God damn, quit your crying." Also in the car was a little boy. She asked Mr. Raymond to put his hands on the wheel so she could see what if anything he had in his hands. Then she asked him to step out of the car and went around to the child's side of the car. Meanwhile a backup officer arrived because she had reported a suspicious vehicle. Later Sergeant Figueroa, her supervisor, also arrived. Deputy Lange was at the scene about ten minutes. Figueroa suggested the deputy take the child to the substation in her car, and have Mr. Raymond follow in his car  which was done. The deputy said Raymond would have been free to go if he had decided not to follow. She said she took Andrew with her for his protection. She had decided in her own mind that Mr. Raymond should be charged with battery, but had not told this to anyone.
Lieutenant Gray arrived at the substation about the same time as Deputy Lange. Deputy Lange conferred with both Sergeant Figueroa and Lieutenant Gray. Lieutenant Gray ordered her to arrest Mr. Raymond, even though a state attorney Deputy Lange had called had advised her to take the child but not to arrest Mr. Raymond. The arrest was for aggravated child abuse.
After Raymond was arrested and given his rights, Deputy Lange questioned him. He never denied hitting his son. Ms. Lange believed Steven Raymond intended to cause serious injury to Andrew  to maliciously hurt him, because the child had blood on him and a mark on his left cheek. She was concerned about Andrew's health and well-being, but no medical assistance was offered him while he was at the substation.
Steven Raymond had told Deputy Lange back on Belvedere Road that he had hit Andrew because he would not stop crying. She made no inquiry as to whether Andrew was any special kind of child or whether he often had nosebleeds.
When Deputy Lange first approached the Raymond car, Andrew was sobbing. He was very little, so she could see only the top of his head. When she observed the child in the car he had a blue and white towel up to his face and there was blood on his arms and hands and on the towel.
When Deputy Lange asked the child what happened he kept repeating his father hit him because he would not quit crying. She finally settled the child down. While in the car with her the child said his father hit him a lot because he was not as smart as his brother.
After his arrest Mr. Raymond told Deputy Lange that Andrew had expected to go to a water slide that day and was upset because he and his father were going on a fishing trip instead. Andrew started crying and wouldn't stop. Mr. Raymond hit him while they were somewhere between the grandmother's house and the place where Deputy Lange encountered the pair at the side of Belvedere Road. In his testimony, Mr. Raymond admitted that he told the child to be quiet lest he get the father into trouble.
The restated issue in the main appeal is whether it was error for the jury to find the defendant guilty of false imprisonment of the father, because there was probable cause to arrest the father.[2] We conclude that it was. Sheriff Wille argues the officer *1213 had probable cause for arresting the father; therefore there can have been no false imprisonment. We agree.
Aggravated child abuse is a felony. For a felony, an officer may lawfully arrest a person without a warrant when the officer "reasonably believes that a felony has been or is being committed and reasonably believes the person to be arrested committed or is committing it." Section 901.15(3), Florida Statutes (1979).
To determine whether probable cause existed for arrest, the test is what a reasonable person would have believed had he known all of the facts known by the officer. State v. Outten, 206 So.2d 392 (Fla. 1968). It has been indicated also that the specialized training of the officer to review the facts the officer knew prior to the actual arrest figures in the equation. See State v. Keen, 384 So.2d 284 (Fla 4th DCA 1980). The standard for weighing whether the facts constitute probable cause for arrest is not to be equated with the standard of conclusiveness and probability that applies when circumstantial facts are used to support a conviction. Shriner v. State, 386 So.2d 525 (Fla. 1980), cert. denied, 449 U.S. 1103, 101 S.Ct. 899, 66 L.Ed.2d 829 (1981).
At the time of the events leading to appellee Steven Raymond's arrest, the law making aggravated child abuse a felony read as follows:
Whoever:
(1) Commits aggravated battery on a child;
(2) Willfully tortures a child;
(3) Maliciously punishes a child; or
(4) Willfully and unlawfully cages a child
shall be guilty of a felony of the second degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.
§ 827.03, Fla. Stat. (1979).
The record indicates that Deputy Lange saw a small child with blood on his face, arm and hands and on a towel he was holding. The child was sobbing. Both the child and the father told the officer the father had hit the child. Putting these facts together, the deputy thought there was probable cause for arrest of the father.
At the encounter on Belvedere Road, the deputy had in mind arrest for battery. At the substation, thanks to a superior's input, she arrested the father for aggravated child abuse.
Appellant correctly contends that the observations made by the deputy at the Belvedere Road scene and the information she received from father and child reasonably furnished probable cause for arrest; and that the trial court should have rendered a directed verdict in favor of the defendants. As a matter of law there could not have been false imprisonment when there was probable cause for arrest.
At the time the defense renewed its motion for directed verdict, the court apparently explained denial of the motion as follows:
In other words, we have Deputy Lange  one that comes to mind is, we have Deputy Lange saying I pulled up to the stop light. I heard screaming and yelling coming from the car on the other side of the road. I heard the defendant, or in this case, Mr. Raymond yelling, Stop your goddamn crying, or something to that effect. On the other hand, we have Mr. Raymond's testimony that while they were parked on the side of the road there was no screaming, there was no yelling, that he was only talking to his son at that time. Deputy Lange says when she arrived she felt that the nose was bleeding. Mr. Raymond says that at that point he thought the bleeding had stopped.
So aren't there factual questions as to what Deputy Lange observed and what she had in front of her at the time that she made the initial arrest?
The defense contended  properly, we think  that the screaming the deputy heard from across the street was not relevant, nor did it matter whether there was more or less blood or whether the bleeding had yet stopped. The essential facts  that the father had hit the child and that there *1214 had been bleeding of the child's nose  were not in dispute. The trial court should have determined as a matter of law that there was probable cause for the arrest and directed a verdict for the defendants.
In the malicious prosecution case of City of Pensacola v. Owens, 369 So.2d 328 (Fla. 1979), the Florida Supreme Court held it is the function of the court to determine whether probable cause existed for prosecution, disapproving the holding in Oosterhoudt v. Montgomery Ward & Company, 316 So.2d 582 (Fla. 1st DCA 1975), that probable cause was a jury question. The Owens court called attention to the supreme court's earlier holding in Glass v. Parrish, 51 So.2d 717 (Fla. 1951), approving an Indiana appellate court's statement that what facts and circumstances amount to probable cause is a pure question of law, while whether they exist in a given case is a question of a fact; and that when the facts are in controversy the subject must be submitted to the jury. Here, the relevant facts are not in controversy.
The restated issue on the cross appeal is whether a new trial should have been granted on the issue of damages sustained by the wife as a result of the false imprisonment of her husband, as the jury verdict that failed to award her any damages on her derivative claim is inconsistent with the verdict in favor of her husband on the false imprisonment count. Because of our reversal of the main appeal, this issue is moot.
DOWNEY and GUNTHER, JJ., concur.
NOTES
[1] In 1986, the Florida Department of Law Enforcement published, pursuant to networking with law enforcement officers throughout the state, The Florida Bar and Department of Health & Rehabilitative Services, published the Juvenile Law Handbook for law enforcement officers in order for them to react and respond in an informed way to a multitude of areas involving juveniles.
[2] We have not assumed the existence of the mark on the child's cheek in our determination, one witness not having seen a mark.