676 So.2d 471 (1996)
FLORIDA GAME AND FRESHWATER FISH COMMISSION and the Department of Environmental Protection, Appellants,
v.
Denzel DOCKERY, Ruth Dockery, Vortex Spring, Inc. and Vortex Innerspace Products, Inc., Appellees.
No. 95-1769.
District Court of Appeal of Florida, First District.
June 11, 1996.
Rehearing Denied August 5, 1996.
*472 Cynthia S. Tunnicliff, Davisson F. Dunlap and Darren A. Schwartz of Pennington & Haben, P.A., Tallahassee, for Appellants.
David K. Miller of Broad and Cassel, Tallahassee, for Appellees.
VAN NORTWICK, Judge.
The Florida Game and Freshwater Fish Commission (GFC) and the Department of Environmental Protection (DEP) appeal a final judgment awarding the appellees $625,000 in damages arising out of the alleged false arrest of Denzel Dockery, arguing, among other things, that the trial court erred in granting a directed verdict in favor of Dockery on the issue of probable cause for the arrest. Appellees, Denzel Dockery and his wife, Ruth, Vortex Spring, Inc. and Vortex Innerspace Products, Inc., have filed a cross-appeal contending, among other things, that the trial court erred in granting a directed verdict in favor of GFC and DEP on the issue of probable cause for the search of the appellees' property. After a thorough review of the record, we conclude that there was probable cause for the search of the appellees' property and for the subsequent arrest of Denzel Dockery. Accordingly, we reverse the judgment awarding damages and affirm the issues raised on cross-appeal.
In the course of conducting an investigation of a complaint, GFC officials became concerned that Mr. Dockery was illegally dumping hazardous chemicals on his property. Major Ronald Walsingham of GFC contacted Robert Kriegel of DEP (formerly the Department of Environmental Regulation) and requested DEP's technical assistance in the investigation. Ultimately, GFC officials sought and obtained a search warrant of the appellees' properties. Soil samples were collected from the property of Vortex Spring by Hazards Environmental Services, Inc. (Hazards), a contractor which handled the "emergency response" test sampling in North Florida under an agreement with DEP. Hazards forwarded the soil samples to an independent laboratory for analysis, which analysis typically involved the performance of an extraction procedure toxicity (EP-Tox) test on the soil samples.[1] Before DEP received any written test results, a Hazards official advised DEP employee David Staples that the EP-Tox test performed by the laboratory indicated that certain soil samples contained hazardous waste.
The written test results were forwarded to DEP and reviewed by Staples. The test results were described in "parts per million extractible" and the term "EP-Tox" was used throughout the reported test data, which reasonably indicated to Staples that an EP-Tox test had been performed. Although Staples realized that one of the three alleged positive soil samples actually was taken from liquid leaking from a drum on appellees' property rather than from soil, based on the test results Staples nevertheless believed that there remained two soil samples which tested positive for hazardous substances on an EP-Tox test. DEP personnel forwarded the results to GFC officers. On March 20, 1990, Dockery was arrested on a felony hazardous waste charge.
In the meantime, unrelated to the investigation of the possible dumping on appellees' property, the DEP contract administrator for the emergency response services was monitoring Hazards' practices under its DEP contract. During the term off the contract, Hazards had experienced problems in filing *473 invoices for work performed (often undercharging) and was not disposing of waste matter collected in a timely manner. On February 28, 1990 and again on March 16, 1990, DEP officials inspected Hazards' facility and found violations of the Resource Conservation and Recovery Act of 1976, 42 U.S.C. §§ 6901-6986, with respect to the storage and disposal of hazardous waste. The following week, DEP officials met with Hazards. As a result of these problems, effective March 29, 1990, DEP terminated its contract with Hazards.
In late March or early April, the Dockerys' consultant contacted the laboratory which had performed the tests on the soil samples collected by Hazards and discovered that the laboratory, in fact, had not performed an EP-Tox test as previously believed. However, it was not until a meeting between the parties on May 25, 1990 that the DEP and GFC officials involved in the investigation learned that the EP-Tox test had not been performed. Shortly thereafter, the felony hazardous waste charge against Dockery was dismissed.
The Dockerys, Vortex Spring, and Vortex Innerspace Products sued GFC and DEP for negligence and false arrest; sued Robert Brantley, in his official capacity as director of GFC, and Virginia Wetherell, in her official capacity as secretary of DEP, pursuant to 42 U.S.C. § 1983, requesting declaratory and injunctive relief; and sued Major Ronald Walsingham of GFC and Robert Kriegel of DEP in their individual capacities pursuant to 42 U.S.C. § 1983, requesting damages on the grounds that there was no probable cause for the search or arrest and that they had acted with reckless disregard and deliberate indifference to Dockery's constitutional rights.
This is the second appearance of this case in this court. The first case involved a petition for writ of common law certiorari brought by Walsingham and Kriegel seeking review of an order denying their motion for summary judgment, in which they maintained they were entitled to a qualified immunity from suit under 42 U.S.C. § 1983 for unreasonable search and unlawful arrest. In an opinion which sets forth the facts of this case in greater detail, this court concluded:
The record reflects that the material facts concerning the availability of the qualified immunity defense are undisputed. Therefore, the existence of probable cause was a question of law to be decided by the court. Since it appears the facts and circumstances known to the public officials were such that a person of reasonable caution would believe a crime was being committed, the motion for qualified immunity summary judgment should have been granted.
Walsingham v. Dockery, 671 So.2d 166, 173 (Fla. 1st DCA 1996)(Dockery I).
While the appeal in Dockery I was pending, the action against GFC and DEP proceeded. Among its other rulings, the trial court directed a verdict in favor of the defendants as to the liability for the search, but directed a verdict of liability in favor of the plaintiffs on the counts charging false arrest. The issues of damages on the false arrest counts were submitted to the jury, which awarded appellees damages of $625,000.
In urging affirmance of the issue on appeal, the appellees, plaintiffs below, contend that Dockery was arrested based upon scientific evidence gathered during the search of his property that the defendants knew or should have known could not support the charge, and thus probable cause did not exist for the arrest.
Based on our review of the record, the facts which led to the search of appellees' property and then to Mr. Dockery's arrest are not in dispute and the issue of whether those facts constituted probable cause for the search and the arrest was correctly seen below as an issue of law to be decided by the trial judge. Wille v. Raymond, 487 So.2d 1211 (Fla. 4th DCA 1986). As the Supreme Court ruled in City of Pensacola v. Owens, 369 So.2d 328 (Fla.1979)(quoting from Glass v. Parrish, 51 So.2d 717 (Fla.1951)):
What facts and circumstances amount to probable cause is a pure question of law. Whether they exist or not in any particular case is a pure question of fact. The former *474 is exclusively for the court; the latter for the jury.
See also, LeGrand v. Dean, 564 So.2d 510 (Fla. 5th DCA 1990), rev. denied, 576 So.2d 288 (Fla.1991).
Where the trial court's decision involves a pure question of law, the appellate court is not bound by the trial court's legal conclusions where those conclusions conflict with established principles of law. In re Estate of Donner, 364 So.2d 742 (Fla. 3d DCA 1978); Avery Development Corp. v. Village by the Sea Condominium Apts, Inc., 567 So.2d 447 (Fla. 4th DCA 1990). Moreover, where the trial court has misconceived the legal effect of the facts, the appellate court is required to reverse. Foley Lumber Co. v. Koester, 61 So.2d 634 (Fla.1952); Becklin v. Travelers Indem. Co., 263 So.2d 629 (Fla. 1st DCA 1972); Overstreet v. Sea Containers, Inc., 348 So.2d 628 (Fla. 3d DCA 1977), cert. denied, 359 So.2d 1219 (Fla.1978).
To succeed in their claim that they were entitled to the affirmative defense of probable cause to the claim of false arrest, the defendants were required to show that the facts and circumstances known to the arresting officers were sufficient to cause a reasonably cautious person to believe that the suspect was guilty of committing the crime. Miller v. City of Jacksonville, 603 So.2d 1310, 1312 (Fla. 1st DCA 1992). To show probable cause in a false arrest situation, it is not necessary that the arresting officer know facts that would absolutely prove beyond a reasonable doubt the guilt of the person charged; probable cause exists when the circumstances are sufficient to cause a reasonably cautious person to believe that the person accused is guilty of the offense charged. Lee v. Geiger, 419 So.2d 717, 719 (Fla. 1st DCA 1982).
In Dockery I, this court determined that, for purposes of section 1983 qualified immunity, the officers had acted reasonably in this instance and that reasonable public officials in the same circumstances and possessing the same knowledge as the defendants could have believed that probable cause existed. Dockery I, 671 So.2d at 172, citing Lowe v. Aldridge, 958 F.2d 1565, 1570 (11th Cir.1992). Although Dockery I involved different defendants, much of the same evidence was examined by the panel in Dockery I. To the extent that the evidence was expanded upon in the trial below, we find that it does not dictate a different result in this case. The facts lead to the same conclusion: There was probable cause for the search and subsequent arrest.
The facts, which are not in dispute, do not demonstrate that the state officers knew or should have known that they did not have the essential scientific evidence that they claimed as a basis to arrest Dockery for a hazardous waste dumping violation. At the time of the incident, DEP was required by contract to use the services of Hazards. It was not until after the search and arrest that Hazards' contract was terminated for matters unrelated to its soil sampling techniques. DEP officials reasonably relied upon Hazards' report that the correct test had been run and that unacceptable levels of chromium and lead were present in the burn pits. Plaintiffs argue that DEP employee Staples should have realized that no EP-Tox test was performed, since the test result data was reported in milligrams per kilogram and an EP-Tox test is performed in milligrams per liter. We find, however, that it was not unreasonable for Staples to conclude from the data that an EP-Tox test had been performed, since the test results were reported in "parts per million," which is also consistent with EP-Tox test reporting. Moreover, even the Dockerys' expert consultant did not realize this discrepancy and only discovered that an EP-Tox had not been performed when he contacted the laboratory itself.
The fact that the DEP and GFC officers later learned the wrong tests had been run on the samples does not mean that probable cause did not exist at the time of the arrest. Hindsight should not be used to determine whether a prior arrest or search was made with probable cause. McCoy v. State, 565 So.2d 860, 861 (Fla. 2d DCA 1990). Events that occur subsequent to the arrest cannot remove the probable cause that existed at the time of the arrest. Dodds v. State, 434 So.2d 940, 942 (Fla. 4th DCA 1983).
*475 Because we have determined that probable cause for the search and Dockery's arrest existed as a matter of law, GFC and DEP were entitled to their complete defense to the action for false arrest. Accordingly, the damages awarded for the false arrest must be reversed and the directed verdict relating to the search must be affirmed. As a result of our resolution of these issues on appeal and cross-appeal, the remaining issues raised are rendered moot.
REVERSED in part and AFFIRMED in part.
BOOTH and JOANOS, JJ., concur.
NOTES
[1] In 1980, the United States Environmental Protection Agency promulgated regulations which established the EP-Tox test to analyze potentially hazardous wastes for 14 particular contaminants, eight metals and six pesticides. 40 C.F.R. § 261.24 (1989). The EP-Tox test is intended to identify wastes with the potential for leaching toxic substances into groundwater, with the maximum allowable concentrations for toxic substances in the leachate set by federal regulation. See, David M. Moore, The Toxicity Characteristic Rule for Hazardous Waste Determination: Has EPA Satisfied Congress' Mandate, 7 Tul. Envtl. L.J., 467, 472 (1994).