DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**SHARRON TASHA FORD,**
Appellant,

v.

**CITY OF BOYNTON BEACH,**
a Florida municipal corporation,
Appellee.

No. 4D19-3664

[May 5, 2021]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; G. Joseph Curley, Jr., Judge; L.T. Case No. 50-2010-CA-016550-XXXX-MB.

Samuel Alexander of Alexander Appellate Law P.A., DeLand, for appellant.

Michael T. Burke and Jonathan H. Railey of Johnson, Anselmo, Murdoch, Burke, Piper & Hochman, P.A., Fort Lauderdale, for appellee.

PER CURIAM.

The plaintiff appeals a final summary judgment on her false arrest claims. She argues that law enforcement did not have probable cause to arrest her for intercepting oral communications and obstruction without violence. We disagree and affirm.

- ***The Incident***

Law enforcement arrested the plaintiff's minor son for trespassing at a theater. The officers called the plaintiff to come and pick him up. She drove to her son's location.

When she arrived, her son and the police officers were on a public sidewalk directly across the street from the movie theater entrance. The sidewalk bordered the edge of the parking lot. As pedestrians are going to and from the theater, they walk within feet of the location where the police officers were holding the plaintiff's son. At various times, twenty to fifty people milled around the theater entrance.

When the plaintiff arrived, the officers were standing on the sidewalk about twenty feet from where her son was being detained by shopping center security guards. She approached the officers with her cell phone on record. One officer told the plaintiff she needed his permission to videotape him. In response, she said, "[he] knew that when [she] came up here with the camera."

The lead officer asked for the plaintiff's identification. He then asked for her address, which she could not provide. She explained they had recently moved here and were staying with her mother. She did not know the address.

On multiple occasions, the officers asked the plaintiff to stop recording their statements and conversations. She ignored their requests and continued to video and audio record them as they processed her son and attempted to gather relevant information as part of their investigation.

The officers advised the plaintiff that she needed their consent to audio record them. At one point, one officer asked her if she was still recording him. She falsely told him that she was not recording him when in fact she was. The plaintiff admitted she never had the officers' consent to audio record them.

The plaintiff also recorded a citizen who stopped to speak to one of the officers. The citizen did not know the plaintiff, did not know he was being recorded, and never authorized her to audio record his conversation with the officer. The plaintiff also admitted she never obtained the citizen's consent to audio record him.

The officers made numerous requests to the plaintiff to stop recording them, which she ignored. The plaintiff was confrontational in her approach and refused to comply with the officers' instructions.

She was permitted to speak to her son, who told her that he had sneaked into the movie theater without paying, was caught, and ordered to leave. He was leaving when he was stopped. Believing the officer to be a security guard, the son asked the officer, "You're not the police so what is this necessary for?" He stated the officer then forcibly arrested him by slamming him against the hood of a car.

After the plaintiff finished speaking to her son, the lead officer began to explain the next steps. The plaintiff asked the officer why he arrested her son and why he "slammed" him on a car for trespassing when he had already left the premises. At this point, the interaction became a little more heated and another officer approached the plaintiff. She explained that she "[was] just asking questions" because she was "a mother and a concerned parent" and that she "ha[d] that right."

2

The lead officer explained why they had called her. She responded that she was "in shock" when they called and that "[the police officers] were aggressive towards [her]." She felt that they were ready to "throw [her] in handcuffs." The officer asked if she was ready to talk and asked if she was still filming. When she said nothing further, the lead officer proceeded to explain why they called her.

At this point, the plaintiff panned the camera around her, and a mall security guard or an officer off to the side put his hand up and said, "No ma'am, I don't want you to take my picture." She moved the frame away from him. Another officer asked her whether she was recording with audio. She responded, "Oh now you're gonna [sic] arrest me." The officer stated that "it was against the law" in the State of Florida to record police officers doing their job on audio and video. He told her that he did not mind her taking pictures, but that she should not continue recording with video and audio.

The plaintiff continued recording, and repeated again, "[s]o now you're going to arrest me . . . and now you're going to harass me. Now you want to intimidate me." The officer told her that he would tell her if he was going to arrest her. At that point, the video cuts off.

After a pause, the recording began again, showing an interaction between the plaintiff and an officer who told her again to turn the camera off. She continued to record and said: "So I escalated it? And, so he wasn't being arrested for that but now I escalated it?" When ordered to turn the camera off again, she stated, "This is a public forum." The video then cuts off.

The video resumes once more with the plaintiff speaking to an officer as he explains how they were going to give her son a trespass warning, instead of arresting him. Because she chose however to disobey their requests to end the recording, they chose to go with a different option.

The plaintiff then interrupted the officer to indicate she was only asking questions. The officer responded that he approached her in a very polite manner and that she did not even give him the common courtesy to explain what was going on. She continued to express that she has the right to ask questions and the video ends.

The police took the plaintiff's camera and placed her under arrest. At the police station, she was booked for intercepting oral communications and obstruction without violence. No charges were ever filed.

- ***The Lawsuit***

3

The plaintiff filed a multi-count complaint against the City and the officers for false arrest, declaratory relief, and for violating her civil rights under 42 U.S.C. § 1983. The City removed the case to federal court where the civil rights claims were dismissed. The state law claims were remanded back to state court.

There, the City moved for summary judgment, arguing the material facts were not in dispute and the police had probable cause to arrest the plaintiff for intercepting oral communications and for obstruction without violence. The plaintiff responded that the relevant parties lacked any expectation of privacy, so the wiretapping statute did not apply, and her arrest for obstruction without violence was based on the police officers' erroneous belief that she was illegally recording them.

The trial court granted the motion for summary judgment. In support of its decision, the court found the recorded parties had a subjective and reasonable expectation of privacy in their communications so that probable cause existed to arrest the plaintiff for violating the wiretapping statute. The trial court also found the plaintiff lied about recording them and obstructed them in their detention of her son, finding probable cause for her arrest for obstruction without violence. The trial court decided that its finding on the existence of probable cause mooted the declaratory judgment claim.

- ### ***Probable Cause to Arrest for Obstruction of Justice***

The standard of review for an order granting summary judgment is de novo. *Volusia Cnty. v. Aberdeen at Ormond Beach, L.P.*, 760 So. 2d 126, 130 (Fla. 2000). Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.* "Summary judgment may be granted only where the facts are so crystallized that nothing remains but questions of law." *Vander Voort v. Universal Prop. & Cas. Ins. Co.*, 127 So. 3d 536, 538 (Fla. 4th DCA 2012) (citing *McCabe v. Fla. Power & Light Co.*, 68 So. 3d 995, 997 (Fla. 4th DCA 2011)).

Probable cause is an affirmative defense to a claim of false arrest. *Mailly v. Jenne*, 867 So. 2d 1250, 1251 (Fla. 4th DCA 2006). We have held:

> To show probable cause in a false arrest situation, it is not necessary that the arresting officer know facts that would absolutely prove beyond a reasonable doubt the guilt of the person charged; probable cause exists when the circumstances are sufficient to cause a reasonably cautious person to believe that the person accused is guilty of the offense charged.

*Id.* (quoting *Fla. Game & Freshwater Fish Comm'n v. Dockery*, 676 So. 2d 471, 474 (Fla. 1st DCA 1996)). "Probable cause is judged by the facts and legal state

4

of affairs that existed at the time of the arrest." *Id.* It is a matter of law for the court; an appellate court is not bound by the trial court's legal conclusions. *Dockery*, 676 So. 2d at 474.

The issue then is whether law enforcement had probable cause to arrest the plaintiff for obstruction without violence under section 843.02, Florida Statutes (2019).

Section 843.02 provides: "Whoever shall resist, **obstruct,** or oppose any officer . . . in the **execution of legal process or in the lawful execution of any legal duty**, without offering or doing violence to the person of the officer shall be guilty of a misdemeanor. . . ." § 843.02, Fla. Stat. (emphasis added). The crime requires proof of two elements: (1) the officer was engaged in the lawful execution of a legal duty; and (2) the action by the accused constituted obstruction or resistance of that legal duty. *Jay v. State*, 731 So. 2d 774, 775 (Fla. 4th DCA 1999).

The plaintiff argues that she did not violate section 843.02 because "her conduct was limited to a verbal exchange with the police" and "she in no way physically obstructed or impeded the police's detention of her son. . . ." But, physical obstruction is not required to violate the statute. The plaintiff's attempt to narrowly read the record, the statute, and the case law is flawed.

A review of the recorded incident reveals the plaintiff's approach to the officers was designed to impede what should have been a short, uneventful exchange of her son's custody. Having been stopped for sneaking into a movie theatre without paying admission, law enforcement sought to avoid the juvenile's arrest by contacting his mother to come and get him. Rather than discuss the circumstances leading to her son's detention, she immediately became confrontational and began recording the officers.

When directed to provide her address, she was unable to do so. When directed to stop recording, she refused to do so. And when the officers calmly asked to speak with her, she accused them of escalating the situation. The plaintiff consistently and persistently failed to comply with the officers' direction and requests. In short, she obstructed their investigation and processing of her son's detention—a lawful execution of their duty.

The trial court reviewed the video in its entirety and found probable cause for the plaintiff's arrest for obstruction without violence. We have done the same. We too find probable cause. Because probable cause existed to arrest the plaintiff on the obstruction without violence charge, we affirm the summary judgment. There is therefore no need to address whether probable cause existed to arrest the plaintiff on the violation of the wiretap statute. *Thomas v. State*, 395 So. 2d 280, 281 (Fla. 3d DCA 1981) ("Where, by objective standards,

probable cause to arrest for a certain offense exists, the validity of an arrest does not turn on the fact that an arrest was effected on another charge.").

*Affirmed.*

MAY and ARTAU, JJ., concur.
WARNER, J., dissents with opinion.

WARNER, J., dissenting.

This appeal arises out of a familiar scene on the news at night: the videotaping of the police during an arrest. In appellant's appeal from a final summary judgment in favor of the City and its officers based on her complaint alleging false arrest, appellant contends that the court erred in finding that the police officers had probable cause to arrest her for intercepting oral communications in violation of the wiretap statute, section 934.03, Florida Statutes (2009), and for obstructing without violence in violation of section 843.02, Florida Statutes (2009). The alleged violations occurred when appellant was videotaping the officers as they were detaining her son. I would reverse on both issues. The officers had no reasonable subjective expectation of privacy when they were conducting the detention, so they did not have probable cause to arrest her for violating the wiretap statute. And, appellant did not physically obstruct the officers but only asked questions, which did not provide probable cause to arrest her for obstruction.

**Facts**

One evening in 2009, Boynton Beach police officers arrested appellant's minor son on suspicion of trespassing at the Muvico Theater in Boynton Beach. The officers called appellant to come and pick up her son. As requested by the officers, appellant drove to her son's location.

When she arrived, her son and the police officers were on a public sidewalk directly across the street from the entrance to movie theater.[1] The distance from the sidewalk to the movie theater was the width of three driving lanes. The sidewalk bordered the edge of the parking lot, and throughout the course of a near-eleven-minute-long video segments, pedestrians walked within feet of the officers and appellant's son to get to and from the theater. At various times throughout the course of appellant's interaction with the officers, approximately twenty to fifty people milled around the entrance to the theater.

Appellant approached the officers with a video camera. The officers stood on the sidewalk about twenty feet from where her son was being detained by

---

[1] The facts set forth are gleaned from viewing the video segments recorded by appellant during this incident.

shopping center security guards. One officer told her that by law she needed his permission to be videotaping him. In response, she said that "[he] knew that when [she] came up here with the camera."

The lead officer asked if appellant had identification, which she did. She then said, "Oh, I'm recording. I just wanted to let you know that I'm recording." The officer said, "Um, yeah you can. Um, may—maybe." He then discussed her identification, and then told her whenever she was ready, he would talk to her about her son's situation. She replied that she was ready to talk. She was allowed to speak to her son, who told her that he had sneaked into the movie theater without paying, was caught, and ordered to leave. He was leaving when the lead officer in the detention stopped him. Believing the officer to be a security guard, the son asked the officer, "You're not the police so what is this necessary for?" He stated that after that the officer forcibly arrested him by slamming him against the hood of a car.

After appellant and her son finished speaking, the lead officer then began to explain the next steps. Appellant asked the officer why he arrested her son and why he "slammed" him on a car for trespassing when he had already left the premises. At this point, the interaction became more heated and another officer approached appellant. She explained that she "[was] just asking questions" because she was "a mother and a concerned parent" and that she "ha[d] that right."

The lead officer explained why they had called her. She responded that she was "in shock" when they called and that "[the police officers] were aggressive towards [her]." She continued that she felt that they were ready to "throw [her] in handcuffs." The officer asked if she was ready to talk and asked if she was still filming. When she said nothing further, the lead officer proceeded to explain why they called her.

Appellant spoke to her son again briefly and then stood to the side, still recording. Five female teenagers were standing nearby watching. The lead officer again explained what they were doing, noting it was not to embarrass the boy, but was the result of his actions. He explained they were almost done and would let him go soon.

Appellant panned the camera around her, and a mall security guard or an officer off to the side put his hand up and said, "No ma'am, I don't want you to take my picture." She moved the frame away from him, as he repeated his request. Another officer asked her whether she was recording with audio. She responded, "Oh now you're gonna [sic] arrest me." The officer stated that "it was against the law" in the State of Florida to record police officers doing their job on audio and video. He told her that he did not mind her taking pictures, but that she was not to continue recording with video and audio.

7

Appellant continued videotaping, and repeated again, "[s]o now you're going to arrest me . . . and now you're going to harass me. Now you want to intimidate me." The officer told her that he would tell her if he was going to arrest her. At that point, the video cuts off.

The video resumes and appellant speaks with the lead officer about her address. A man and a woman who apparently knew the lead detective interrupt appellant's conversation with the officer and exchange a few words with the officer. The man has his back to the camera for most of the conversation, and the conversation is unintelligible.

When the lead officer resumes his discussion with appellant, he asks her if the camera was still on. She falsely claimed that it was turned off. Other officers approach her and tell her that her son is under arrest. The tone of appellant's voice on the video indicates that she is agitated. The lead officer then tells her to "hang tight" and he did not want to hear another word from her until they were finished with the paperwork at which point she could leave.

After a pause in the video, it resumes with an interaction between appellant and an officer who tells her to turn the camera off. She continues to state that she is asking a question, "So I escalated it? And so he wasn't being arrested for that but now I escalated it?" When ordered to turn the camera off again, she stated, "This is a public forum." The video then cuts off.

The video resumes with appellant speaking to a police officer as he explains how they were going to give her son just a trespass warning, instead of arresting him and giving him a trespass warning. Because appellant chose not to listen to what they were saying, they chose to go with different options. Appellant interrupts and states that she was just asking questions. The officer continues and says that he approached her in a very polite manner and that she did not even give him the common courtesy to explain what was going on. She continues to say that she has the right to ask questions and the video ends.

The police took appellant's camera and placed her under arrest. At the police station, she was booked for intercepting oral communications and obstruction without violence. No charges were ever filed.

Appellant filed a multi-count complaint against the City and the officers for false arrest, declaratory relief, and counts for violation of her civil rights under 42 U.S.C. § 1983. The City removed the case to federal court, where the civil rights claims were dismissed, and the state law claims were remanded to state court.

Back in state court, the City filed a motion for summary judgment arguing that the material facts were not in dispute, and that as a matter of law the police had probable cause to arrest appellant for intercepting oral communications and

8

for obstruction without violence. In her response, appellant argued that the relevant parties lacked any expectation of privacy, so that the wiretapping statute did not apply, and that her arrest for obstruction was based on the police officers' erroneous belief that she was illegally recording them.

The court granted summary judgment on both counts of the complaint. In support of its decision with regard to Count I, the court found that the recorded parties had a subjective and reasonable expectation of privacy in their communications, so that probable cause existed to arrest appellant for violating the wiretapping statute. The trial court also found that appellant obstructed the police in their detention of her son and lied to the police about recording them, so that probable cause existed to arrest her for obstruction without violence. With regard to appellant's Count II declaratory judgment claim, the court found that the City was entitled to judgment because the existence of probable cause for her arrest rendered the claim moot.

## Analysis

The standard of review for an order granting summary judgment is de novo. *Volusia Cnty. v. Aberdeen at Ormond Beach, L.P.,* 760 So. 2d 126, 130 (Fla. 2000). Summary judgment is proper if there is no genuine issue of material fact and the moving party is therefore entitled to judgment as a matter of law. *Id.* "Summary judgment may be granted only where the facts are so crystallized that nothing remains but questions of law." *Vander Voort v. Universal Prop. & Cas. Ins. Co.,* 127 So. 3d 536, 538 (Fla. 4th DCA 2012) (citing *McCabe v. Fla. Power & Light Co.,* 68 So. 3d 995, 997 (Fla. 4th DCA 2011)).

Probable cause is an affirmative defense to a claim of false arrest. *Malley v. Jenne,* 867 So. 2d 1250, 1251 (Fla. 4th DCA 2006). The test for probable cause is:

> To show probable cause in a false arrest situation, it is not necessary that the arresting officer know facts that would absolutely prove beyond a reasonable doubt the guilt of the person charged; probable cause exists when the circumstances are sufficient to cause a reasonably cautious person to believe that the person accused is guilty of the offense charged.

*Id.* (quoting *Fla. Game & Freshwater Fish Comm'n v. Dockery,* 676 So. 2d 471, 474 (Fla. 1st DCA 1996)). "Probable cause is judged by the facts and legal state of affairs that existed at the time of the arrest." *Id.* It is a matter of law for the court, and an appellate court is not bound by the legal conclusions of the trial court. *Dockery,* 676 So. 2d at 474.

Because as a matter of law, I conclude that the officers could not have had a *reasonable* subjective expectation of privacy, there was no probable cause to arrest appellant for violation of the wiretap statute. Further, because appellant's conduct was verbal and not physical, and her lie about recording did not interfere with the performance of a legal duty, I also conclude that the officers did not have probable cause to arrest her for obstruction. Therefore, I would reverse the summary judgment.

**Whether the officers had probable cause to arrest Ford for violation of Florida's wiretapping statute, section 934.03, Florida Statutes**

Section 934.03, Florida Statutes (2009), as it existed in 2009 is substantively the same as today's version. Titled "Interception and disclosure of wire, oral, or electronic communications prohibited," the statute contains a general prohibition on the interception of oral communications. It provides:

> 1) Except as otherwise specifically provided in this chapter, any person who:
>
> (a) Intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept . . . any . . . oral . . . communication;
>
> . . . .
>
> shall be punished as provided in subsection (4) [imposing criminal liability].

§ 934.03(1)(a), Fla. Stat. (2009). "Intercept" is defined as "the aural or other acquisition of the contents of . . . oral communication through the use of any electronic, mechanical, or other device." Section 934.02(3), Fla. Stat. (2009). "Oral communication" is defined in the statute as "**any oral communication uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation** and does not mean any public oral communication uttered at a public meeting or any electronic communication." § 934.02(2), Fla. Stat. (2009) (emphasis added). The statute provides a list of specific exceptions to the general prohibition in section 934.03(1). § 934.03(2), Fla. Stat. (2009). One of these exceptions is for situations in which all parties to the conversation have given prior consent. § 934.03(2)(d), Fla. Stat. (2009).

The test to determine whether a person exhibits a subjective expectation of privacy set forth in section 934.02(2), defining "oral communication," is substantially the same as the test enumerated in *Smith v. Maryland*, 442 U.S. 735, 740 (1979), to determine a Fourth Amendment right to privacy. *See Jackson v. State*, 18 So. 3d 1016, 1029–30 (Fla. 2009); *State v. Inciarrano*, 473

So. 2d 1272, 1275 (Fla. 1985); *Mozo v. State*, 632 So. 2d 623, 628 (Fla. 4th DCA 1994), approved, 655 So. 2d 1115 (Fla. 1995). "[F]or an oral conversation to be protected under section 934.03, **the speaker must have an actual subjective expectation of privacy, along with a societal recognition that the expectation is reasonable**." *State v. Smith*, 641 So. 2d 849, 852 (Fla. 1994) (emphasis supplied).

A person exhibits a subjective expectation of privacy only when "the individual has shown that 'he seeks to preserve [something] as private.'" 442 U.S. at 740 (quoting *Katz v. U.S.*, 389 U.S. 347, 351 (1967)). A party's claim to a subjective expectation of privacy in a conversation can be rejected when there is no evidence the party "made any effort or otherwise took precautions to keep the conversation private." *Stevenson v. State*, 667 So. 2d 410, 412 (Fla. 1st DCA 1996); *see also McDonough v. Fernandez-Rundle*, 862 F.3d 1314, 1319 (11th Cir. 2017) ("[T]he expectations of privacy needed to trigger application of [Florida's wiretapping statute] must be exhibited; in other words they must be 'shown externally' or 'demonstrated.'").

"A reasonable expectation of privacy under a given set of circumstances depends upon one's actual subjective expectation of privacy *as well as whether society is prepared to recognize* this expectation as reasonable." *Inciarrano*, 473 So. 2d at 1275 (citation omitted). I would hold that a law enforcement officer has no *reasonable* subjective expectation of privacy in conversations he has with the public or the arrestee in the performance of the officer's duties in public places.[2] They are performing a public duty at the time, and the public has a right to hear their words. This is as true today as it was in 2009.

A rule otherwise would mean that everyone who pulls out a cell phone to record an interaction with police, whether as a bystander, a witness, or a suspect, is committing a crime. Given how important cell phone videos have been for police accountability across the nation, I do not believe that society is ready to recognize that the recording of those interactions, which include audio recordings, are somehow subject to the officer's right of privacy. If that were the case, then had the individual who recorded George Floyd saying to the officers "I can't breathe" been in Florida, he would have been guilty of a crime.

There are few cases in Florida concerning whether a law enforcement officer has a reasonable subjective right of privacy in his/her oral communications during the performance of his duties with the public. The City cites to an Eleventh Circuit unpublished opinion, *Migut v. Flynn*, 131 F. App'x 262 (11th Cir. 2005), and this Court's decision in *State v. Keen*, 384 So. 2d 284 (Fla. 4th DCA 1980), to argue that the police officers had both subjective and reasonable

---

[2] While there may be circumstances which may call for non-public disclosure of conversations, such as with confidential informants or persons who wish to give anonymous tips, this case does not deal with one of those situations.

expectations of privacy. *Keen* does not discuss reasonable expectation of privacy, and *Migut,* which is not binding on this Court, incorrectly relied on *Keen* in its discussion about an officer's expectation of privacy.

In *Keen,* the defendant was seen with a bugging device at a jail. 384 So. 2d at 285. An officer approached the defendant and another individual who were engaged in a conversation. *Id.* As the officer spoke to the defendant, he noticed what he perceived to be tape recorder in his hand. The defendant then left, and the officer put out a BOLO to stop the vehicle. *Id.* at 286. The vehicle was stopped, and defendant was arrested at a later time for violating the wiretap statute. The trial court found no probable cause to stop the vehicle and suppressed the evidence found in the stop. This Court reversed, concluding that the officers who stopped the vehicle had probable cause because one of them had been informed by the officer who spoke with the defendant at the jail that he had seen the recording device as he was talking to the defendant. *Id.* at 287. The Court noted that the first officer had good reason to believe that his conversation was being recorded, especially as he had prior knowledge that the defendant was carrying a bugging device. *Id.* at 287. The Court did not consider whether the conversation at the jail was reasonably subject to an expectation of privacy. The officer involved, however, was not engaged in any performance of his legal duties, as far as the facts show, when he was conversing with the defendant. More importantly, *Keen* was decided well prior to *State v. Smith* which held that section 943.03 required both an actual subjective expectation of privacy as well as a societal recognition of that expectation.

*Migut* is likewise distinguishable. It involved a 42 U.S.C. § 1983 claim by a plaintiff arrested for violation of the wiretap statute. Under a section 1983 claim, the officer is protected by qualified immunity, which a plaintiff may overcome only if it is shown that the plaintiff had a constitutional right which was clearly established. There, the plaintiff, a tow truck operator stopped by a deputy for disobeying a stop sign, began to record his conversation with the deputy with a handheld tape recorder. *Id.* at 263. Upon noticing the recorder, the deputy told Migut to turn the recorder off. *Id.* Migut refused and the officer placed Migut under arrest for intercepting an oral communication in violation of section 934.03. The court held that the deputy had "arguable probable cause" to believe Migut was violating section 934.03(1)(a) when Migut taped their conversation and where the deputy did not consent. *Id.* at 267. In its reasoning, the court simply stated that "it was not unreasonable for [the deputy] to expect that the conversation would be protected under § 934.03(1)(a)," citing to *Keen. Id.* Thus, the plaintiff had not established a constitutional right to be free from arrest for recording his interaction with the officer, based solely on *Keen.*

*Migut's* reliance on *Keen* is misplaced because *Keen* never held that the officer had a reasonable subjective expectation of privacy in the conversation being recorded at the jail. However, as pointed out above, it is not clear in *Keen* that

the officer was engaged in the execution of his public duties at the time he was having the conversation with the defendant. In *Migut,* however, the officer was performing his duty in executing a traffic stop. Regardless, I would disagree with the conclusion of *Migut* that the officer could expect his conversation with Migut was somehow protected by a reasonable expectation of privacy. Moreover, because the court failed to apply *State v. Smith,* it did not follow supreme court precedent.

A Florida case more on point is *Department of Agricultural & Consumer Services v. Edwards,* 654 So. 2d 628 (Fla. 1st DCA 1995). There, Edwards was employed as a law enforcement officer with the Department of Agriculture. He secretly recorded a meeting between himself and several other officers, including a major and a captain, about a grievance he had filed. *Id.* at 630. He was then arrested for violation of the wiretap statute. Edwards was terminated because of this violation. A hearing officer determined that the officers had no reasonable subjective expectation of privacy in their investigatory interview with Edwards. *Id.* Nevertheless, the agency terminated Edwards, and he appealed. The First District relied on *State v. Inciarrano,* 473 So. 2d 1272, 1275 (Fla. 1985) in concluding that the officers did not have a reasonable expectation of privacy which society would recognize:

> We conclude that the hearing officer was justified in finding that any subjective expectation of privacy held by Edwards's supervisors was not reasonable under the circumstances of this case. We reach this conclusion based not on the officers' suspicion that Edwards would record their statements, but *because of the number of persons present when the statements were made, the place chosen for the interview, and the very nature of that interview.*

*Id.* at 632–33 (emphasis supplied). The "nature of the interview" in *Edwards* was a disciplinary investigation into Edward's grievances conducted by public officers as part of their duties. Similarly, in this case a public officer was conducting an arrest of an individual, the very core of the officer's public functions. And, the officer was performing this public function in the presence of several other officers and at least twenty members of the public who passed by.

Under a similar statute, Pennsylvania has determined that an officer has no reasonable subjective expectation of privacy in communications occurring during the public execution of the officer's duties. In *Commonwealth v. Henlen,* 564 A.2d 905 (Pa. 1989), the court held that the surreptitious recording by the defendant of an investigative interrogation did not violate Pennsylvania's wiretap statute, because the officer had no reasonable subjective expectation of the privacy of the interrogation.

In 2001, Massachusetts took the position that its wiretap statute did prohibit the surreptitious recording of an officer's conversations during a traffic stop. *See Commonwealth v. Hyde*, 750 N.E.2d 963 (Mass. 2001). The statute in question, unlike the Florida statute, did not limit the oral communication to which it applied to ones in which a person has a reasonable expectation of privacy. Nevertheless, the First Circuit recently held the statute unconstitutional as a violation of the First Amendment, because it prohibited the secret recording of public officials discharging their public duties in public spaces. *Project Veritas Action Fund v. Rollins*, 982 F.3d 813 (1st Cir. 2020).

While no First Amendment challenge is involved in the present case, the *Rollins* court's opinion provides insight into the issue of whether an officer's subjective expectation of privacy is reasonable. The court understood that the accountability function of recording police officers performing a public function was consistent with First Amendment news-gathering protections:

> [A]s recent events around the nation vividly illustrate, such undetected recording can itself serve "a cardinal First Amendment interest in protecting and promoting 'the free discussion of governmental affairs,' " and "not only aids in the uncovering of abuses . . . but also may have a salutary effect on the functioning of government more generally." *Glik* [*v. Cuniffe*], 655 F.3d [78,] [] 82–83 [1st Cir. 2011] (quoting *Mills* [*v. Alabama*], 384 U.S. [214,] [] 218[] [1996]); *cf. Fields* [*v. City of Philadelphia*], 862 F.3d [353,] [] 359 [3d Cir. 2017] ("Civilian video . . . fills the gaps created when police choose not to record video or withhold their footage from the public.").

> . . . .

> In sum, a citizen's audio recording of on-duty police officers' treatment of civilians in public spaces while carrying out their official duties, even when conducted without an officer's knowledge, can constitute newsgathering every bit as much as a credentialed reporter's after-the-fact efforts to ascertain what had transpired. The circumstances in which such recording could be conducted from a distance or without the officers' knowledge and serve the very same interest in promoting public awareness of the conduct of law enforcement -- with all the accountability that the provision of such information promotes -- are too numerous to permit the conclusion that recording can be prohibited in all of those situations without attracting any First Amendment review. We thus hold that the [] Plaintiffs' proposed recording constitutes a type of newsgathering that falls within the scope of the First Amendment, even though it will be undertaken secretly within the meaning of Section 99.2.

*Id.* at 832–33 (footnote omitted).

Because recording their communications is an essential tool in gathering information about police conduct, the police can hardly have an expectation that their communications during the performance of their duties can be subject to their personal expectation of privacy. *See also ACLU v. Alvarez*, 679 F.3d 583, 606 (7th Cir. 2012) (finding Illinois eavesdropping statute violates First Amendment and noting that conversations of police officers in public spaces performing public duties are not conversations which carry privacy expectations).

Turning now to cases involving non-public officials, courts look to a totality of the circumstances approach to determine whether there is a reasonable subjective expectation of privacy in a conversation to bring it within the wiretap statute. Factors include the location of the conversation and the parties involved in it.

As the First District has noted, a significant factor used in determining the reasonableness of one's expectation of privacy in a conversation is the location in which the conversation or communication occurs. *Stevenson v. State*, 667 So. 2d 410, 412 (Fla. 1st DCA 1996). For example, in *Inciarrano*, the Florida Supreme Court found that there was no reasonable expectation in an office, based on the factual circumstances including "the quasi-public nature of the premises within which the conversations occurred, the physical proximity and accessibility of the premises to bystanders, and the location and visibility to the unaided eye of the microphone used to record the conversations[.]" 473 So. 2d at 1274. This Court in *Cinci v. State*, 642 So. 2d 572, 573 (Fla. 4th DCA 1994) held that a trial court properly admitted into evidence a tape recording of a conversation that occurred in an apartment building courtyard. Likewise, in *Stevenson*, the court found that there was no reasonable expectation of privacy because the "communication was made in an open, public area rather than in an enclosed, private, or secluded area." 642 So. 2d at 412. Finally, the Fifth District found no reasonable expectation where the communication occurred in the parking lot of a shopping center. *Ruiz v. State*, 416 So. 2d 32, 33 (Fla. 5th DCA 1982). Here, the conversation occurred on the sidewalk in front of a movie theater and next to the parking lot where people were going in and out. It was a very public place.

Further, the conversations occurred in front of several people, mostly other officers, but also other random pedestrians who encountered the officers. Just as in *Edwards*, the number of persons present when the statements were recorded show that it was not a private conversation. Moreover, the officers own language indicates that they did not "seek[] to preserve" their communication as private, or take "precautions to keep the conversation private." *Smith*, 442 U.S.

15

at 740; *Stevenson*, 667 So. 2d at 412. At one point, the lead officer directly called attention to the situation, when he turned towards a family he apparently knew and called out to them, "Hey, we're doing our job! Look, isn't this [unintelligible]?" The fact that officer was quite literally asking them to look indicates that he was not concerned about his privacy. Moreover, at the beginning of appellant's conversation with the lead officer she tells him that she is recording, and he gives permission, "Um, yeah you can. Um, may—maybe." Where the officers communicated in an open public area, and knowingly exposed their communication to third parties, there can be no reasonable expectation of privacy.

The City also argues that they had probable cause to arrest her for violation of the wiretap statute when she captured the encounter between the lead officer and his friend during the son's detention. While the friend testified that he had "an expectation of privacy anywhere [he was]," I conclude that where he approached an officer in the midst of an arrest or detention and engaged in simple pleasantries, an expectation of privacy is not reasonable. The *Project Veritas* court addressed the issue of a recording picking up conversations of individuals in and around the police performing their public duties. In arguing for the constitutionality of the Massachusetts statute, the State argued that civilians in and around the police had rights of privacy which may be implicated when someone is recording the police. The court noted, "[T]he only individuals who will be recorded by the [] Plaintiffs are those in public spaces who are within earshot of police officers and choose to speak." 982 F.3d at 839. In other words, those civilians put themselves in the public space by seeking to engage the officers. Similarly, where the lead officer's friend engaged the officer while he was in the middle of an arrest and detention in a public place with other law enforcement officers and citizens milling around, he had no reasonable expectation of privacy in the conversation. From a review of the recording, it is clear that the friend did not take any precautions to keep his conversation with the officer private, nor did he exhibit such an expectation. *Stevenson*, 667 So, 2d at 412; *McDonough*, 862 F.3d at 1319. And, in any event, under these circumstances society would not have recognized any such expectation as reasonable.

At the time of appellant's arrest for violation of section 943.03, the law was well established that a person must have an actual subjective expectation of privacy which society recognizes is reasonable. The facts of this case show that no such reasonable expectation of privacy existed. Consequently, I conclude that the officer had no probable cause to arrest appellant for a violation of the wiretap statute. The court erred in entering summary judgment on this ground.

**Whether the officers had probable cause to arrest Ford**
**for violation of Florida's obstruction without violence statute,**
**section 843.02, Florida Statutes.**

16

From a review of appellant's video recording, the trial court also concluded that the officer had probable cause to arrest appellant for obstruction without violence. Section 843.02, Florida Statutes (2009), titled "Resisting officer without violence to his or her person," provides:

> Whoever shall resist, obstruct, or oppose any officer . . . or other person legally authorized to execute process in the execution of legal process or in the lawful execution of any legal duty, without offering or doing violence to the person of the officer, shall be guilty of a misdemeanor of the first degree, punishable as provided in s. 775.082 or s. 775.083.

The statute has two elements: "(1) the officer was engaged in the lawful execution of a legal duty; and (2) the defendant's action, by his words, conduct, or a combination thereof, constituted obstruction or resistance of that lawful duty." *C.E.L. v. State*, 24 So. 3d 1181, 1185–86 (Fla. 2009) (citations omitted).

"With limited exceptions, physical conduct must accompany offensive words to support a conviction under [section 843.02]." *W.W. v. State*, 993 So. 2d 1182, 1185 (Fla. 4th DCA 2008) (quoting *Francis v. State*, 736 So. 2d 97, 98 (Fla. 4th DCA 1999)); *see also Francis*, 736 So. 2d at 98 (holding that falsely informing an officer that everything was fine when someone was in need of medical attention only became obstruction when the defendant also physically blocked the officer's path); *H.A.P. v. State*, 834 So. 2d 237, 238–39 (Fla. 3d DCA 2002) (upholding defendant's obstruction conviction not just for cursing and shouting profanities while SWAT team officers were executing a narcotics search warrant, but for refusing to leave the area and interfering with execution of the warrant); *Wilkerson v. State*, 556 So. 2d 453, 456 (Fla. 1st DCA 1990) (holding that defendant obstructed officers not by simply yelling and cursing at them, but by refusing to leave an area where the police were attempting to make arrests). For example, in *W.W.*, we reversed a defendant's conviction under section 843.02, where the defendant lied to an officer about a suspect's whereabouts during the officer's search for the suspect but "did not physically impede the deputy's investigation." 993 So. 2d at 1186. The reason why words alone cannot constitute obstruction in most cases is because to do so would violate the First Amendment. *See D.A.W. v. State*, 945 So. 2d 624 (Fla. 2d DCA 2006).

Here, appellant asked the officers questions and raised her voice when she discovered that they planned to arrest her son. She did not curse at the officers (although cursing alone would never be sufficient to constitute obstruction). She did not stand between her child and the officers so as to physically impede their duties. She merely passionately expressed herself as any mother might do.

17

The trial court also mentioned that appellant had lied to the officer in saying that she was no longer recording. But that information had nothing to do with impeding the officers in the performance of their duties. While our court has held that giving, or not correcting, a false name after being arrested or detained constitutes an obstruction under the statute, we have not held the same where a defendant provides other false information before an arrest and does not physically obstruct the officers. *Compare Fripp v. State*, 766 So. 2d 252, 254 (Fla. 4th DCA. 2000) (defendant who gave false name to officer attempting to investigate traffic infraction could be convicted of resisting arrest without violence), *and Simeon v. State*, 778 So. 2d 455, 456 (Fla. 4th DCA 2001) (defendant's act of giving interviewing officer a false name and date of birth constituted resisting an officer in execution of his duty to confine adult arrestees in adult detention facilities), *with W.W.*, 993 So. 2d at 1185 (lying alone insufficient), *and with Francis*, 736 So. 2d at 98 (Fla. 4th DCA 1999) (lying became obstruction only when accompanied by physical obstruction). One can readily see that giving a false name could prevent the officer from processing the arrest of an individual. Lying to the officer about whether one is recording the encounter does not.

Again, the law regarding obstruction without violence was well established at the time of appellant's arrest. The officers did not have probable cause to arrest the appellant for obstruction.

### Conclusion

The facts of this case seem to be only too similar to so many police encounters caught on video or cell phones. The officers had no reasonable expectation of privacy in their conversations while performing their public duties, particularly in public spaces. Given the prevalence of small video cameras and cell phones in public spaces, society has definitively come down on the side of approving the videoing of officers in the performance of their duties as a method of accountability. Because I conclude that the court erred in finding that the officers had probable cause to arrest the appellant for violation of the wiretap statute or for obstruction of the justice statute, I would reverse the final summary judgment and remand for further proceedings.

*        *        *

***Not final until disposition of timely filed motion for rehearing.***