DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**SHARRON TASHA FORD,**
Appellant,

v.

**CITY OF BOYNTON BEACH,**
a Florida municipal corporation,
Appellee.

No. 4D19-3664

[August 4, 2021]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; G. Joseph Curley, Jr., Judge; L.T. Case No. 50-2010-CA-016550-XXXX-MB.

Samuel Alexander of Alexander Appellate Law P.A., DeLand, for appellant.

Michael T. Burke and Jonathan H. Railey of Johnson, Anselmo, Murdoch, Burke, Piper & Hochman, P.A., Fort Lauderdale, for appellee.

Michael Masinter, Miami, James K. Green of James K. Green, P.A., West Palm Beach, and Daniel B. Tilley of The American Civil Liberties Union Foundation of Florida, Inc., Miami, for Amicus Curiae The American Civil Liberties Union Foundation of Florida, Inc., The Florida Justice Institute, The Radio Television Digital News Association, The National Press Photographers Association, The South Florida Chapter of the National Lawyers Guild, Center for Freedom of Information, Society of Environmental Journalists, First Look Media Works, Inc., American Society of Media Photographers, and The Society of Professional Journalists.

***ON MOTION FOR REHEARING***

PER CURIAM.

We grant the motion for rehearing, withdraw our prior opinion, and substitute the following in its place.

Appellant Sharron Tasha Ford challenges a final summary judgment entered in favor of appellee City of Boynton Beach on her complaint alleging false arrest by city police officers. She argues that law enforcement did not have probable

cause to arrest her for intercepting oral communications and for obstruction without violence. We agree and reverse.

On an evening in 2009, law enforcement detained appellant's minor son as a juvenile for trespassing at a movie theater. The officers called appellant to come and pick him up. As requested, appellant drove to her son's location and the incident from which her arrest arose ensued.[1]

When appellant arrived at the scene, her son and the police officers were outdoors next to a publicly accessible sidewalk at a shopping center directly across the street from the movie theater entrance. Because the police officers did not close any portion of the sidewalk during this incident, pedestrians continued to use the sidewalk for ingress and egress to the theater and shopping center parking lot. At any given time during the juvenile's detention, there were numerous bystanders who were permitted to mill around the detention site as they were coming and going from the theater entrance.

Appellant approached the officers with a video camera. The officers stood on the sidewalk about twenty feet from where her son was being detained by shopping center security guards. One officer told appellant that by law she needed his permission to videotape him. In response, she said, "You knew that when I came up here with the camera." When the lead officer took over interacting with appellant, she told him that she was recording, and he gave permission, stating, "Um, yeah you can. Um, may—maybe." She then repeated to the lead officer that she was recording, and he responded, "Oh you're recording me? Ok."

The lead officer asked for appellant's identification. She gave him her out of state license. He asked for her address, which she could not provide. She explained they had recently moved here and were staying with her mother.

Appellant was permitted to speak to her son, who told her that he had sneaked into the movie theater without paying, was caught, and ordered to leave. After the son left the theater, an officer that the son believed was a security guard stopped him. The son asked the officer: "You're not the police so what is this necessary for?" He stated the officer then forcibly arrested him by slamming him against the hood of a car.

After appellant finished speaking to her son, the lead officer began to explain the next steps. She asked the lead officer why he arrested her son and why he "slammed" him on a car for trespassing when he had already left the premises. At this point, the interaction became more confrontational, and another officer approached appellant. She explained that she "[was] just asking questions"

---

[1] The facts are gleaned from viewing video segments recorded by appellant during the incident.

2

because she was "a mother and a concerned parent" and that she "ha[d] that right."

The lead officer explained why they had called her. She responded that she was "in shock" when they called and that "[the police officers] were aggressive towards [her]." She felt that they were ready to "throw [her] in handcuffs." The officer asked if she was ready to talk and asked if she was still recording. When appellant said nothing further, the officer proceeded to explain why they called her. She then spoke to her son again briefly and stood to the side, continuing to record the scene, including numerous bystanders watching the police.

At this point, appellant panned the camera around, and an unidentified man who may have been a theater security guard put his hand up and said: "No ma'am, I don't want you to take my picture." She moved the frame away from him. Another officer asked her whether she was recording with audio. She responded: "Oh now you're gonna [sic] arrest me." The officer stated that "it was against the law" in the State of Florida to record on audio and video. He told her that he did not mind her taking pictures, but that she should not continue recording with video and audio.

Appellant continued recording and repeated again: "So now you're going to arrest me . . . and now you're going to harass me. Now you want to intimidate me." The officer told her that he would tell her if he was going to arrest her. At that point, the video cuts off.

The video resumes with appellant speaking to the lead officer about her address. A man and a woman who apparently knew the lead detective interrupted appellant's conversation with the officer and exchanged a few words with him. The man had his back to the camera for most of the conversation, and the conversation was unintelligible.

When the lead officer resumed his discussion with appellant, he asked her if the camera was still on. She falsely claimed that it was turned off. Other officers approached her and told her that her son was under arrest.

After a pause, the video begins again, recording an interaction between appellant and an officer who told her again to turn the camera off. She continued to record and said: "So I escalated it? And, so he wasn't being arrested for that but now I escalated it?" When ordered to turn the camera off again, she stated, "This is a public forum." The video then cuts off shortly thereafter.

The video resumes once more with appellant speaking to an officer as he explained how they were going to turn her son over to her after he was issued a trespass warning, instead of arresting him. But because she chose not to listen to them, they chose to go with the option of arresting him as a juvenile.

3

Appellant then interrupted the officer to state that she was only asking questions. The officer responded that he approached her in a very polite manner and that she did not even give him the common courtesy to explain why her son was being detained. Appellant continued to express that she had the right to ask questions as the video ends.

The police took appellant's camera and placed her under arrest. At the police station, she was booked for obstruction without violence and intercepting oral communications. Despite appellant's arrest, no criminal charges were ever filed by the State against her.

Appellant filed a multi-count complaint against the City and the officers for false arrest, declaratory relief, and for violating her civil rights under 42 U.S.C. § 1983. The City removed the case to federal court where the civil rights claims were dismissed. The state law claims were remanded back to state court.

The City moved for summary judgment, arguing the police had probable cause to arrest appellant for intercepting oral communications and for obstruction without violence. Appellant responded that the relevant parties lacked any expectation of privacy, so the wiretapping statute did not apply, and her arrest for obstruction without violence was based on the police officers' erroneous belief that she was illegally recording them.

The trial court granted the motion for summary judgment. In support of its decision, the court found the recorded parties had a subjective and reasonable expectation of privacy in their communications so that probable cause existed to arrest appellant for violating the wiretapping statute. The trial court also found appellant lied to the police about recording them and obstructed the police in their detention of her son, concluding that probable cause existed for her arrest for obstruction without violence. Appellant appeals the final summary judgment.

The standard of review for an order granting summary judgment is de novo. *Volusia Cnty. v. Aberdeen at Ormond Beach, L.P.,* 760 So. 2d 126, 130 (Fla. 2000). Summary judgment is proper if there is no genuine issue of material fact, and the moving party is therefore entitled to judgment as a matter of law. *Id.* "Summary judgment may be granted only where the facts are so crystallized that nothing remains but questions of law." *Vander Voort v. Universal Prop. & Cas. Ins. Co.,* 127 So. 3d 536, 538 (Fla. 4th DCA 2012) (citing *McCabe v. Fla. Power & Light Co.,* 68 So. 3d 995, 997 (Fla. 4th DCA 2011)).

Probable cause is an affirmative defense to a claim of false arrest. *Mailly v. Jenne,* 867 So. 2d 1250, 1251 (Fla. 4th DCA 2004) (citation omitted). The test for probable cause is:

4

To show probable cause in a false arrest situation, it is not necessary that the arresting officer know facts that would absolutely prove beyond a reasonable doubt the guilt of the person charged; probable cause exists when the circumstances are sufficient to cause a reasonably cautious person to believe that the person accused is guilty of the offense charged.

*Id.* (quoting *Fla. Game & Freshwater Fish Comm'n v. Dockery*, 676 So. 2d 471, 474 (Fla. 1st DCA 1996)). "Probable cause is judged by the facts and legal state of affairs that existed at the time of the arrest." *Id.* It is a matter of law for the court, and an appellate court is not bound by the legal conclusions of the trial court. *Dockery*, 676 So. 2d at 474.

Because as a matter of law the officers could not have had a reasonable "expectation that such communication is not subject to interception under circumstances justifying such expectation" as required by the wiretap statute, section 934.03(1)(a), Florida Statutes (2009), and section 934.02(2), Florida Statutes (2009), there was no probable cause to arrest appellant for violation of the wiretap statute. Further, the officers did not have probable cause to arrest appellant for obstruction, because her words and actions did not constitute obstruction of the officers in the performance of their duties.[2] Therefore, we reverse the summary judgment and remand for further proceedings.

*Reversed and remanded.*

WARNER and ARTAU, JJ., concur.
WARNER, J., concurs specially with opinion.
ARTAU, J., concurs specially with opinion.
MAY, J., concurs in part and dissents in part with opinion.

WARNER, J., concurring specially.

This appeal arises out of a familiar scene on the news at night: the videotaping of the police during an arrest. I concur with the majority opinion reversing the summary judgment. Because as a matter of law the officers could not have had a *reasonable* subjective expectation of privacy, there was no probable cause to arrest appellant for violation of the wiretap statute, section 934.03, Florida Statutes (2009). Further, because appellant's conduct was verbal and not physical, and her lie about recording did not interfere with the performance of a legal duty, the officers did not have probable cause to arrest her for obstruction. I write to explain my reasoning.

---

[2] In their brief in support of the motion for rehearing, amicus argue that citizens have a First Amendment right to record the police. This ground was never raised at trial or on appeal, and it is improper to raise new issues on appeal in a motion for rehearing. We therefore do not address it.

5

**Whether the officers had probable cause to arrest appellant for violation of Florida's wiretapping statute, section 934.03, Florida Statutes.**

Section 934.03, Florida Statutes, as it existed in 2009, is substantively the same as today's version. Titled "Interception and disclosure of wire, oral, or electronic communications prohibited," the statute contains a general prohibition on the interception of oral communications. It provides:

> 1) Except as otherwise specifically provided in this chapter, any person who:
>
> (a) Intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept . . . any . . . oral . . . communication;
>
>     . . . .
>
> shall be punished as provided in subsection (4) [imposing criminal liability].

§ 934.03(1)(a), Fla. Stat. (2009). "Intercept" is defined as "the aural or other acquisition of the contents of any . . . oral communication through the use of any electronic, mechanical, or other device." § 934.02(3), Fla. Stat. (2009). "Oral communication" is defined in the statute as "**any oral communication uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation** and does not mean any public oral communication uttered at a public meeting or any electronic communication." § 934.02(2), Fla. Stat. (2009) (emphasis added).

"[F]or an oral conversation to be protected under section 934.03, the speaker must have an **actual subjective expectation of privacy, along with a societal recognition that the expectation is reasonable**." *State v. Smith*, 641 So. 2d 849, 852 (Fla. 1994) (citation omitted) (emphasis supplied). The test to determine whether a person exhibits a subjective expectation of privacy set forth in section 934.02(2), defining "oral communication," is substantially the same as the test enumerated in *Smith v. Maryland*, 442 U.S. 735, 740 (1979), to determine a Fourth Amendment right to privacy. *See Jackson v. State*, 18 So. 3d 1016, 1029–30 (Fla. 2009); *State v. Inciarrano*, 473 So. 2d 1272, 1275 (Fla. 1985); *Mozo v. State*, 632 So. 2d 623, 628 (Fla. 4th DCA 1994), *approved*, 655 So. 2d 1115 (Fla. 1995).

A person exhibits a subjective expectation of privacy only when "the individual has shown that 'he seeks to preserve [something] as private.'" *Smith v. Maryland*,

442 U.S. at 740 (quoting *Katz v. United States*, 389 U.S. 347, 351 (1967)). A party's claim to a subjective expectation of privacy in a conversation can be rejected when there is no evidence the party "made any effort or otherwise took precautions to keep the conversation private." *Stevenson v. State*, 667 So. 2d 410, 412 (Fla. 1st DCA 1996); *see also McDonough v. Fernandez-Rundle*, 862 F.3d 1314, 1319 (11th Cir. 2017) ("[T]he expectations of privacy needed to trigger application of [Florida's wiretapping statute] must be exhibited; in other words they must be 'shown externally' or 'demonstrated.'").

"A reasonable expectation of privacy under a given set of circumstances depends upon one's actual subjective expectation of privacy *as well as whether society is prepared to recognize* this expectation as reasonable." *Inciarrano*, 473 So. 2d at 1275 (citation omitted). A law enforcement officer has no *reasonable* subjective expectation of privacy in conversations he or she has with the public or the arrestee in the performance of the officer's duties in public places.[3] The officer is performing a public duty at the time, and the public has a right to hear the officer's words. This was as true in 2009 as it is today.

A rule otherwise would mean that everyone who pulls out a cell phone to record an interaction with police, whether as a bystander, a witness, or a suspect, is committing a crime. Given how important cell phone videos have been for police accountability across the nation, I do not believe that society is ready to recognize that the recording of those interactions, which include audio recordings, are somehow subject to the officer's right of privacy. If that were the case, then had the individual who recorded George Floyd saying to the officers "I can't breathe" been in Florida, she would have been guilty of a crime.

There are few cases in Florida concerning whether a law enforcement officer has a reasonable subjective right of privacy in his/her oral communications during the performance of his duties with the public. The City cites to an Eleventh Circuit unpublished opinion, *Migut v. Flynn*, 131 F. App'x. 262 (11th Cir. 2005), and this Court's decision in *State v. Keen*, 384 So. 2d 284 (Fla. 4th DCA 1980), to argue that the police officers had both subjective and reasonable expectations of privacy. *Keen* does not discuss a reasonable expectation of privacy, and *Migut*, which is not binding on this Court, incorrectly relied on *Keen* in its discussion about an officer's expectation of privacy.

In *Keen*, the defendant was seen with a bugging device at a jail. 384 So. 2d at 285. An officer approached the defendant and another individual who were engaged in a conversation. *Id.* As the officer spoke to the defendant, he noticed what he perceived to be tape recorder in his hand. The defendant then left, and the officer put out a BOLO to stop the vehicle. *Id.* at 286. The vehicle was

---

[3] While there may be circumstances which involve non-public conversations, such as with confidential informants or persons who wish to give anonymous tips, this case does not deal with one of those situations.

stopped, and the defendant was arrested at a later time for violating the wiretap statute. The trial court found no probable cause to stop the vehicle and suppressed the evidence found in the stop. This Court reversed, concluding that the officers who stopped the vehicle had probable cause that a violation of the wiretap statute had occurred, because one of them had been informed by the officer who spoke with the defendant at the jail that he had seen the recording device as he was talking to the defendant. *Id.* at 287. The opinion noted that the first officer had good reason to believe that his conversation was being recorded, especially as he had prior knowledge that the defendant was carrying a bugging device. *Id.* at 287. The Court did not consider whether the conversation at the jail was reasonably subject to an expectation of privacy. The facts in the opinion do not show that the officer involved was engaged in any performance of his legal duties when he was conversing with the defendant. More importantly, *Keen* was decided well prior to *State v. Smith*, which held that section 934.03 required both an actual subjective expectation of privacy as well as a societal recognition of that expectation.

*Migut* is likewise distinguishable. It involved a 42 U.S.C. § 1983 claim by a plaintiff arrested for violation of the wiretap statute. In a 42 U.S.C. § 1983 claim, the officer is protected by qualified immunity, which a plaintiff may overcome only if it is shown that the plaintiff had a constitutional right which was clearly established. The plaintiff Migut, a tow truck operator stopped by a deputy for disobeying a stop sign, began to record his conversation with the deputy with a handheld tape recorder. *Id.* at 263. Upon noticing the recorder, the deputy told Migut to turn the recorder off. *Id.* Migut refused, and the officer placed Migut under arrest for intercepting an oral communication in violation of section 934.03. The court held that the deputy had "arguable probable cause" to believe Migut was violating section 934.03(1)(a) when Migut taped their conversation and where the deputy did not consent. *Id.* at 267. In its reasoning, the court simply stated that "it was not unreasonable for [the deputy] to expect that the conversation would be protected under § 934.03(1)(a)," citing to *Keen*. *Id.* Thus, Migut had not established a constitutional right to be free from arrest for recording his interaction with the officer based solely on *Keen*.

*Migut's* reliance on *Keen* is misplaced because *Keen* never held that the officer had a reasonable subjective expectation of privacy in the conversation being recorded at the jail. As pointed out above, it is not clear in *Keen* that the officer was engaged in the execution of his public duties at the time he was having the conversation with the defendant. In *Migut*, however, the officer was performing his duty in executing a traffic stop. Regardless, I would disagree with the conclusion of *Migut* that the officer could expect his conversation was somehow protected by a reasonable expectation of privacy. Moreover, the court failed to consider *State v. Smith* in determining whether the officer reasonably could have believed that he had probable cause to arrest Migut.

8

A Florida case more on point is *Department of Agriculture & Consumer Services v. Edwards*, 654 So. 2d 628 (Fla. 1st DCA 1995). There, Edwards was employed as a law enforcement officer with the Department of Agriculture. He secretly recorded a meeting between himself and several other officers, including a major and a captain, about a grievance he had filed. *Id.* at 630. He was then arrested for violation of the wiretap statute. Edwards was terminated because of this violation. A hearing officer determined that the officers had no reasonable subjective expectation of privacy in their investigatory interview with Edwards. *Id.* Nevertheless, the agency terminated Edwards, and he appealed. The First District relied on *State v. Inciarrano*, 473 So. 2d 1272, 1275 (Fla. 1985), in concluding that the officers did not have a reasonable expectation of privacy which society would recognize:

> We conclude that the hearing officer was justified in finding that any subjective expectation of privacy held by Edwards's supervisors was not reasonable under the circumstances of this case. We reach this conclusion based not on the officers' suspicion that Edwards would record their statements, but *because of the number of persons present when the statements were made, the place chosen for the interview, and the very nature of that interview.*

*Id.* at 632–33 (emphasis supplied). The "nature of the interview" in *Edwards* was a disciplinary investigation into Edwards' grievances conducted by public officers as part of their duties. Similarly, in this case a public officer was conducting an arrest of an individual, the very core of the officer's public functions. And, the officer was performing this public function in the presence of several other officers and at least twenty members of the public who passed by.

Under a similar statute, Pennsylvania has determined that an officer has no reasonable subjective expectation of privacy in communications occurring during the public execution of the officer's duties. In *Commonwealth v. Henlen*, 564 A.2d 905 (Pa. 1989), the court held that the surreptitious recording by the defendant of an investigative interrogation did not violate Pennsylvania's wiretap statute, because the officer had no reasonable subjective expectation of the privacy of the interrogation.

Even if we apply the standard used to determine whether the wiretap statute applies to non-public officials, such application also compels a finding that there was no reasonable subjective expectation of privacy to the conversations recorded during this incident. Courts look to the totality of the circumstances to determine whether there is a reasonable subjective expectation of privacy in a conversation to bring it within the wiretap statute, including the location of the conversation and the parties involved.

9

As the First District has noted, a significant factor used in determining the reasonableness of one's expectation of privacy in a conversation is the location in which the conversation or communication occurs. *Stevenson v. State*, 667 So. 2d at 412. For example, in *Inciarrano*, the Florida Supreme Court found that there was no reasonable expectation of privacy for communications recorded at an office, based on the factual circumstances including "the quasi-public nature of the premises within which the conversations occurred, the physical proximity and accessibility of the premises to bystanders, and the location and visibility to the unaided eye of the microphone used to record the conversations[.]" 473 So. 2d at 1274. This Court in *Cinci v. State*, 642 So. 2d 572, 573 (Fla. 4th DCA 1994), held that a trial court properly admitted into evidence a tape recording of a conversation that occurred in an apartment building courtyard. Likewise, in *Stevenson*, the court found that there was no reasonable expectation of privacy because the "communication was made in an open, public area rather than in an enclosed, private, or secluded area." 667 So. 2d at 412. Finally, the Fifth District found no reasonable expectation where the communication occurred in the parking lot of a shopping center. *Ruiz v. State*, 416 So. 2d 32, 33 (Fla. 5th DCA 1982). Here, the conversation occurred on the sidewalk in front of a movie theater and next to the parking lot where people were coming and going. It was a very public place.

Further, the conversations occurred in front of several people, mostly other officers, but also other random pedestrians who encountered the officers. Just as in *Edwards*, the number of persons present when the statements were recorded show that it was not a private conversation. Moreover, the officers' own language indicates that they did not "seek[] to preserve" their communication as private, or take "precautions to keep the conversation private." *Smith*, 442 U.S. at 740; *Stevenson*, 667 So. 2d at 412. At one point, the lead officer directly called attention to the situation, when he turned towards a family he apparently knew and called out to them, "Hey, we're doing our job! Look, isn't this [unintelligible]?" The fact that officer was quite literally asking them to look indicates that he was not concerned about his privacy. Moreover, at the beginning of appellant's conversation with the lead officer she tells him that she is recording, and he gives permission, "Um, yeah you can. Um, may—maybe." Where the officers communicated in an open public area and knowingly exposed their communication to third parties, there can be no reasonable expectation of privacy.

The City also argues that the officers had probable cause to arrest appellant for violation of the wiretap statute when she captured the encounter between the lead officer and his friend during appellant's son's detention. While the friend testified that he had "an expectation of privacy anywhere [he was]," I conclude that where he approached an officer in the midst of an arrest or detention to engage in conversation, an expectation of privacy is not reasonable. In *Project Veritas Action Fund v. Rollins*, 982 F.3d 813 (1st Cir. 2020), the court addressed

10

the issue of a recording picking up conversations of individuals in and around the police performing their public duties. In arguing for the constitutionality of the Massachusetts statute, the State contended that civilians around the police had rights of privacy which may be implicated when someone is recording the police. The court dismissed those concerns, noting, "[T]he only individuals who will be recorded by the [] Plaintiffs are those in public spaces who are within earshot of police officers and choose to speak." 982 F.3d at 839. In other words, those civilians put themselves in the public space by seeking to engage the officers while they are performing their duties. Similarly, where the lead officer's friend engaged the officer while he was in the middle of an arrest and detention in a public place with other law enforcement officers and citizens milling around, he had no reasonable expectation of privacy in the conversation. From a review of the recording, it is clear that the friend did not take any precautions to keep his conversation with the officer private, nor did he exhibit such an expectation. *Stevenson*, 667 So. 2d at 412; *McDonough*, 862 F.3d at 1319. And, in any event, under these circumstances society would not have recognized any such expectation as reasonable.

While no First Amendment challenge is involved in the present case,[4] several courts have held that prohibition of recording police performing public duties violates the First Amendment because it interferes with the newsgathering function. *See, e.g., Project Veritas*; *Am. C.L. Union of Ill. v. Alvarez*, 679 F.3d 583, 606 (7th Cir. 2012) (finding Illinois eavesdropping statute violates First Amendment and noting that conversations of police officers in public spaces performing public duties are not conversations which carry privacy expectations). Because recording police communications is an essential tool in gathering information about police conduct, the police can hardly have an expectation that their communications during the performance of their duties can be subject to their personal expectation of privacy.

At the time of appellant's arrest for violation of section 934.03, the law was well established that a person must have an actual subjective expectation of privacy which society recognizes is reasonable. The facts of this case show that no such reasonable expectation of privacy existed. Consequently, the officer had no probable cause to arrest appellant for a violation of the wiretap statute. The court erred in entering summary judgment on this ground.

**Whether the officers had probable cause to arrest appellant
for violation of Florida's obstruction without violence statute,
section 843.02, Florida Statutes.**

---

[4] As noted in the majority, no First Amendment challenge was ever made to the statute in the trial court. Neither the majority nor my concurrence should be interpreted as ruling on the First Amendment implications of the wiretap statute.

From a review of appellant's video recording, the trial court also concluded that the officer had probable cause to arrest appellant for obstruction without violence. Section 843.02, Florida Statutes (2009), titled "Resisting officer without violence to his or her person," provides:

> Whoever shall resist, obstruct, or oppose any officer . . . or other person legally authorized to execute process in the execution of legal process or in the lawful execution of any legal duty, without offering or doing violence to the person of the officer, shall be guilty of a misdemeanor of the first degree, punishable as provided in s. 775.082 or s. 775.083.

The statute has two elements: "(1) the officer was engaged in the lawful execution of a legal duty; and (2) the defendant's action, by his words, conduct, or a combination thereof, constituted obstruction or resistance of that lawful duty." *C.E.L. v. State*, 24 So. 3d 1181, 1185–86 (Fla. 2009) (citations omitted).

"With limited exceptions, physical conduct must accompany offensive words to support a conviction under [section 843.02]." *W.W. v. State*, 993 So. 2d 1182, 1185 (Fla. 4th DCA 2008) (quoting *Francis v. State*, 736 So. 2d 97, 98 (Fla. 4th DCA 1999)); *see also Francis*, 736 So. 2d at 98 (holding that falsely informing an officer that everything was fine when someone was in need of medical attention only became obstruction when the defendant also physically blocked the officer's path); *H.A.P. v. State*, 834 So. 2d 237, 238–39 (Fla. 3d DCA 2002) (upholding defendant's obstruction conviction not just for cursing and shouting profanities while SWAT team officers were executing a narcotics search warrant, but for refusing to leave the area and interfering with execution of the warrant); *Wilkerson v. State*, 556 So. 2d 453, 456 (Fla. 1st DCA 1990) (holding that defendant obstructed officers not by simply yelling and cursing at them, but by refusing to leave an area where the police were attempting to make arrests). For example, in *W.W.*, we reversed a defendant's conviction under section 843.02, where the defendant lied to an officer about a suspect's whereabouts during the officer's search for the suspect but "did not physically impede the deputy's investigation." 993 So. 2d at 1186. The reason why words alone cannot constitute obstruction in most cases is because to do so would violate the First Amendment. *See D.A.W. v. State*, 945 So. 2d 624, 625 (Fla. 2d DCA 2006).

Here, appellant asked the officers questions and raised her voice when she discovered that they planned to arrest her son. She did not curse at the officers (although cursing alone would never be sufficient to constitute obstruction). She did not stand between her child and the officers so as to physically impede their duties. She merely passionately expressed herself as any mother might do.

The trial court also mentioned that appellant had lied to the officer in saying that she was no longer recording. But that information had nothing to do with

impeding the officers in the performance of their duties. While our Court has held that giving, or not correcting, a false name after being arrested or detained constitutes an obstruction under the statute, we have not held the same where a defendant provides other false information before an arrest and does not physically obstruct the officers. *Compare Fripp v. State*, 766 So. 2d 252, 254 (Fla. 4th DCA. 2000) (defendant who gave false name to officer attempting to investigate traffic infraction could be convicted of resisting arrest without violence), *and Simeon v. State*, 778 So. 2d 455, 456 (Fla. 4th DCA 2001) (defendant's act of giving interviewing officer a false name and date of birth constituted resisting an officer in execution of his duty to confine adult arrestees in adult detention facilities), *with W.W.*, 993 So. 2d at 1185 (lying alone insufficient), *and with Francis*, 736 So. 2d at 98 (Fla. 4th DCA 1999) (lying became obstruction only when accompanied by physical obstruction). One can readily see that giving a false name could prevent the officer from processing the arrest of an individual. Lying to the officer about whether one is recording the encounter does not.

Again, the law regarding obstruction without violence was well established at the time of appellant's arrest. The officers did not have probable cause to arrest appellant for obstruction.

## Conclusion

The facts of this case seem to be only too similar to so many police encounters caught on video or cell phones. The officers had no reasonable expectation of privacy in their conversations while performing their public duties, particularly in public spaces. Given the prevalence of video cameras and cell phones in public spaces, society has definitively come down on the side of approving the videoing of officers in the performance of their duties as a method of accountability. Because the court erred in finding that the officers had probable cause to arrest appellant for violation of the wiretap statute or for the obstruction of justice, I concur in the reversal of the final summary judgment and remand for further proceedings.

ARTAU, J., concurring specially.

Because probable cause is an affirmative defense that would bar a false arrest claim, we must decide whether law enforcement had probable cause to arrest the appellant for either obstruction of justice or intercepting oral communications.

I concur in result with my colleague Judge Warner because I also conclude that law enforcement did not have probable cause to arrest appellant for either of those charges.

13

**Obstruction of Justice Arrest**

Appellant was arrested for the crime of obstruction without violence in violation of section 843.02, Florida Statutes (2009).  This crime requires proof of two elements: "(1) the officer was engaged in the lawful execution of a legal duty; and (2) the action by the defendant constituted obstruction or resistance of that legal duty."  *S.G.K. v. State*, 657 So. 2d 1246, 1247 (Fla. 1st DCA 1995).

It is undisputed that appellant never attempted to physically obstruct or in any way impede law enforcement's detention of her son, nor did she ever fail to follow any of their instructions as to where she was allowed to stand or remain after she arrived at the site where the police were investigating the delinquent act her son was accused of committing.  Instead, appellant lawfully remained in a publicly accessible area which was never closed from public access by law enforcement during the detention of her son.  And although the police officers were clearly annoyed by what they perceived as verbal harassment from appellant, there is a "distinction between verbal harassment and obstructive conduct" in that the offense of obstruction of justice cannot "infringe upon rights of free speech under the First Amendment."  *See D.A.W. v. State*, 945 So. 2d 624, 626-27 (Fla. 2d DCA 2006) ("[A] person's exercise of free speech, without more, in an open public place while an officer is engaged in the execution of a legal duty must do more than merely irritate, annoy, or distract the officer to constitute a crime.").

Without question, a parent plays a very important role in a juvenile proceeding.  *See J.R. v. State*, 923 So. 2d 1269, 1273 (Fla. 1st DCA 2006) ("Florida Rule of Juvenile Procedure 8.010(a) contemplates parents' participation as parties at detention hearings unless they 'cannot be located[.]'" (footnote omitted)).  Despite this important role, it was not appellant—but her son—who was accused of committing an illegal act.  Thus, the police officers had neither probable cause nor reasonable suspicion to require appellant to do anything other than to provide her and her son's contact and identifying information.  *See* § 985.101(3), Fla. Stat. (2009) ("[T]he person taking the child into custody shall attempt to notify the parent, guardian, or legal custodian of the child. . . . Following notification, the parent or guardian must provide identifying information, including name, address, date of birth, social security number, and driver license number or identification card number of the parent or guardian to the person taking the child into custody or the department [of Juvenile Justice].").

Of the information the police officers could have legally requested from appellant pursuant to section 985.101, her local physical address was the only information she did not immediately provide.  But appellant did provide her identification with her out-of-state address together with a local post office box address and explained that because she had recently moved to Florida she did not know the address.  However, the video reflects that appellant did contact

14

someone to obtain the local physical address and was able to provide it to the police officers well before her arrest.

Appellant's mere delay in providing her local physical address to the officers could not constitute probable cause for her arrest. Even if appellant had completely failed to provide her local physical address, the officers would still not have had probable cause to arrest her. At most, they would have been precluded from having the option of providing her with custody of her son pending a court order compelling disclosure of the address at a subsequent juvenile detention hearing or proceeding for parental sanctions. *See M.A.W. v. State*, 859 So. 2d 566, 566 (Fla. 5th DCA 2003) ("Before a court may order sanctions against the parents or guardians of a delinquent child, a petition for parental sanctions must be served on the parents or guardian in accordance with Florida Rule of Juvenile Procedure 8.031.").

Moreover, appellant could not have obstructed the police officers because her interaction with the officers was consensual and required nothing from her for them to execute their legal duty as the officers could have simply ignored appellant and proceeded with the option of turning the child over to the Department of Juvenile Justice for further processing as a juvenile arrest. *See Blue v. State*, 837 So. 2d 541, 547–48 (Fla. 4th DCA 2003) ("Since it was only a consensual encounter, [defendant] was also free to ignore the detective and walk away" and thus defendant "was not unlawfully opposing or obstructing [the] [d]etective [] in the lawful execution of a legal duty.").

Other than her role as the parent of a child who was being detained for allegedly committing a delinquent act, the appellant was a mere bystander to her son's detention. She was not the subject of a pending investigation. She was not the detained suspect. Indeed, the only reason appellant was there is because the officers contacted her and requested that she meet them at the location where her son was detained.

Accordingly, the officers did not have probable cause to arrest appellant for obstruction of justice.

### Intercepting Oral Communications Arrest

Appellant was also arrested for intercepting oral communications in violation of section 934.03(1)(a), Florida Statutes (2009), which generally prohibits the recording of oral communications as defined in section 934.02(2), Florida Statutes (2009).

Section 934.02(2) defines oral communications as "any oral communication uttered by a person exhibiting an expectation that such communication is not subject to interception *under circumstances justifying such expectation* and does

15

not mean any public oral communication uttered at a public meeting or any electronic communication." § 934.02(2), Fla. Stat. (2009) (emphasis added).

The statutory prohibition from intercepting or recording oral communications exempts consensual recordings. § 934.03(2)(d), Fla. Stat. (2009).

In *McDade v. State*, 154 So. 3d 292 (Fla. 2014), our supreme court addressed this statute in the context of a stepdaughter's recording of her stepfather's confession that he raped her. Because the recordings were made "surreptitiously" without the stepfather's consent, the supreme court in *McDade* concluded that the recordings were illegally obtained and could not be used against him in the rape prosecution. *Id.* at 298.

While the facts in *McDade* bear no resemblance to this case, *McDade* is nonetheless instructive for how it explained *State v. Inciarrano*, 473 So. 2d 1272 (Fla. 1985). *Inciarrano* involved recordings that were made in the victim's place of business by visible microphones that captured communications implicating the defendant in the victim's murder. *Id.* at 1274. *McDade* explained that the *Inciarrano* recordings were not made under circumstances justifying any expectation that the communications were not subject to interception because of "the quasi-public nature of the premises within which the conversations occurred, the physical proximity and accessibility of the premises to bystanders, and the location and visibility to the unaided eye of the microphone used to record the conversations." *McDade*, 154 So. 2d at 298 (quoting *Inciarrano*, 473 So. 2d at 1274).

Similarly, the recordings were not made here under circumstances justifying any expectation that the communications were not subject to interception. Although the appellant was not entirely forthright about when she stopped recording the police officers, she was not recording them "surreptitiously." Instead, the appellant disclosed that she intended to record the interaction with the officers immediately upon her arrival, and the officers were aware and could see that she was holding up her cell phone or recording device to record them. The appellant's recording device was clearly visible and not concealed. Indeed, after the appellant disclosed that she intended to record the encounter with law enforcement, the investigating officer consented by responding: "Ok" and "Um, yeah you can."

Even more compelling than *Inciarrano*, the recording here occurred outdoors on a sidewalk at a shopping center that was open and accessible to the public, including numerous bystanders.

Undoubtedly, the oral communications were not intercepted by appellant under circumstances that could reasonably justify any expectation that the officers and other participants would not be recorded. Thus, appellant was not

16

prohibited from recording the officers and participants that could be publicly seen and heard.

Accordingly, the officers lacked probable cause to arrest appellant for intercepting oral communications.

## Conclusion

Because the officers lacked probable cause to arrest appellant, I join my colleague Judge Warner in reversing the entry of summary judgment and remanding for further proceedings consistent with this opinion.

MAY, J., concurring in part and dissenting in part.

I concur with the per curiam majority opinion to reverse the summary judgment based on the wiretap statute because the officers did not have a reasonable expectation of privacy. I further concur in the important observation made in footnote 2 that the First Amendment was raised for the first time in the appellant's and amicis' motions for rehearing. It was not raised in the trial court or in the briefs in this court. That issue has not been preserved. *Aills v. Boemi*, 29 So. 3d 1105, 1108 (Fla. 2010).

I dissent however from the majority's holding that probable cause did not exist to arrest the appellant on the obstruction of justice without violence charge. I believe the majority has conflated probable cause with proof beyond a reasonable doubt without saying so. While a conviction on this charge may not have withstood appellate scrutiny, the video is replete with evidence of probable cause to arrest the appellant on obstruction of justice without violence. And, the concurring opinions which conclude there was no probable cause for obstruction of justice without violence have no precedential value. *See, e.g., Greene v. Massey*, 384 So. 2d 24 (Fla. 1980); *see also Love v. Young*, No. 1D18-2844, 2021 WL 2547912 (Fla. 1st DCA June 22, 2021) (Bilbrey, J., concurring in denial of motion for rehearing).

Probable cause is an affirmative defense to a claim of false arrest. *Mailly v. Jenne*, 867 So. 2d 1250, 1251 (Fla. 4th DCA 2006). We have held:

> To show probable cause in a false arrest situation, it is not necessary that the arresting officer know facts that would absolutely prove beyond a reasonable doubt the guilt of the person charged; probable cause exists when the circumstances are sufficient to cause a reasonably cautious person to believe that the person accused is guilty of the offense charged.

*Id.* (quoting *Fla. Game & Freshwater Fish Comm'n v. Dockery*, 676 So. 2d 471, 474 (Fla. 1st DCA 1996)). "Probable cause is judged by the facts and legal state of affairs that existed at the time of the arrest." *Id.* It is a matter of law for the court; an appellate court is not bound by the trial court's legal conclusions. *Dockery*, 676 So. 2d at 474.

The facts and "legal state of affairs" revealed by the appellant's own video recordings fully support the existence of probable cause to arrest for obstruction without violence under section 843.02, Florida Statutes (2019). I would therefore affirm on this issue, which defeats the appellant's false arrest claim as the trial court correctly concluded.

Section 843.02 provides: "Whoever shall resist, **obstruct,** or oppose any officer . . . in the **execution of legal process or in the lawful execution of any legal duty**, without offering or doing violence to the person of the officer shall be guilty of a misdemeanor. . . ." § 843.02, Fla. Stat. (emphasis added). The crime requires proof of two elements: (1) the officer was engaged in the lawful execution of a legal duty; and (2) the action by the accused constituted obstruction or resistance of that legal duty. *Jay v. State*, 731 So. 2d 774, 775 (Fla. 4th DCA 1999).

The appellant argues that she did not violate section 843.02 because "her conduct was limited to a verbal exchange with the police" and "she in no way physically obstructed or impeded the police's detention of her son. . . ." But, physical obstruction is not required to violate the statute. *See, e.g.*, *J.M. v. State*, 960 So. 2d. 813, 815 (Fla. 3d DCA 2007); *N.H. v. State*, 890 So. 2d 514, 517 (Fla. 3d DCA 2005); *K.A.C. v. State*, 707 So. 2d 1175, 1176 (Fla. 3d DCA 1998).

No one really contests the officers were engaged in the lawful execution of their duty. But, the appellant's and majority's attempt to narrowly view the record and require physical obstruction to support such a charge runs afoul of the statute and numerous cases.

A review of the recorded incident reveals the appellant's approach to the officers was designed to impede and obstruct what should have been a short, uneventful exchange of her son's custody. Having been stopped for sneaking into a movie theatre without paying admission, law enforcement sought to avoid the juvenile's detention by contacting his mother to come and get him. Rather than discuss the circumstances leading to her son's detention, the appellant immediately approached the officers in a confrontational manner. She began recording the officers and taunting them with her accusatory questions and remarks.

Despite her attitude, the officers remained calm and deliberative. At least three of them tried to have a casual conversation with her about her son's arrest

but she would not have it. Her intent was evident—create yet another YouTube video and controversy. And she succeeded. By the majority's ruling today, she has also succeeded in creating litigation out of nothing.

When she arrived, an officer attempted to explain what was happening, she began by telling the officer that when she was called and told that her son had been handcuffed, she felt that the officers wanted to handcuff her. She told them "I got the attitude, this is the Florida way." She claimed the officers were only trying to embarrass and humiliate her son. She argued with them about her son's arrest for trespass. She asked whether they identified themselves, but they were wearing full police uniforms, badges, etc. She told her son not to worry, "we'll take it from here and do what we need to do."

When the supervisor asked her not to record them, she responded: "oh, now you are going to arrest me . . . you want to harass and intimidate me?" She spoke on the phone to her son's friend who had been with him, but not arrested. She asked if he had seen the arrest and told him they would talk about it later.

As the officers were writing the report, she asked for her identification back. She asked why they needed it. She said: "So you're giving me a trespass citation?" The officers explained they needed her identification to write their report. When the officers asked again for her current address, she gave them a P. O. Box. After living at the same address for three months, she did not know it. Ultimately, she provided a physical address. When the officers tried to explain to her what was going to happen, she responded: "I escalated it? How did I escalate it?"

In short, when the officers asked for her address, she was unwilling to provide one. When directed to stop recording, she refused to do so. And when the officers calmly asked on multiple occasions to speak with her, she accused them of escalating the situation. The appellant consistently and persistently failed to respond to the officers' requests or comply with their direction. In sum, she obstructed their investigation and the processing of her son's detention for violating the law—a lawful execution of their duty.

This case is similar to *J.M., N.H.,* and *K.A.C.,* all of which affirmed findings of guilt based on similar circumstances. In *J.M.,* a juvenile, who was watching two girls fighting, refused to leave when the police ordered the crowd to disperse. 960 So. 2d at 814–15. He later approached the officers with clenched fists because his brother had been detained. *Id.* at 814. The Third District upheld a finding of guilt against the juvenile for resisting without violence based on his refusal to comply with the officers' instructions. *Id.* at 815.

In *N.H.,* the Third District upheld another finding of guilt for obstruction without violence. 890 So. 2d at 517. There, a juvenile was seen fleeing from a

parking lot where police heard a female scream. *Id.* at 515. When they caught up to him, he "refused to provide his name or answer any other questions." *Id.* Rather, during the brief time that enveloped the incident, "he presented himself as very aggressive and agitated, cursing and being otherwise disruptive." *Id.* Under the totality of circumstances, the Third District held the evidence sufficient to establish the crime. *Id.* at 517.

Similarly, in *K.A.C.*, over the State's confession of error, the Third District affirmed an adjudication of delinquency on the charge of resisting without violence. 707 So. 2d at 1177. There, a juvenile "cursed the officers and refused to provide any information" after he was stopped for suspected truancy. *Id.* at 1176.

Each of these cases illustrate the error in the majority's decision. Physical obstruction is unnecessary to even a finding of guilt on resisting/obstructing without violence, let alone probable cause for arrest. All that the statute requires is that the officers be in the lawful execution of a legal duty and that under the totality of circumstances, the subject resists, obstructs, or opposes that officer. § 843.02, Fla. Stat.

Judge Warner suggests that because the appellant did not curse at the officers or stand between them and her son to physically impede their duties, no probable cause existed. She concludes the appellant was simply passionately expressing herself. There's a difference between passionate expression and the appellant's conduct in this case. Here, that passionate expression prolonged and obstructed the officer's investigation, resulted in her son's arrest, and ultimately in her arrest.

Judge Artau joins in the result, partially based on the lack of physical obstruction. But he has also chosen to go down a path untraveled by the appellant either in the trial court or this court—the parent path. Her status as a parent is undisputed, but even the appellant did not play the parent card. And nothing in the statutes suggests the rules are different if the subject is related to someone in custody.

The trial court reviewed the video in its entirety, considered the totality of the circumstances, and found probable cause for the appellant's arrest for obstruction without violence. I have done the same. The video supports a probable cause finding.

Because probable cause existed to arrest the appellant on the obstruction without violence charge, I would affirm the summary judgment. There would really be no need to address whether probable cause existed to arrest the appellant on the violation of the wiretap statute. *Thomas v. State*, 395 So. 2d 280, 281 (Fla. 3d DCA 1981) ("Where, by objective standards, probable cause to

20

arrest for a certain offense exists, the validity of an arrest does not turn on the fact that an arrest was effected on another charge.").

*    *    *

***Not final until disposition of timely filed motion for rehearing.***